DANIELS, et al. *v.* BUSH, et al.

Division A. Feb. 19, 1951.

No. 37834 (50 So. (2d) 563)

(1)

Quitman Ross, for appellants.

Homer W. Pittman and Carroll Gartin, for appellees.

**Lee, J.**

Thomas B. Bush and wife, Mrs. Pearl Bush, lost their lives in an automobile wreck on January 28, 1948. This suit was instituted by Mrs. Ira Daniels and others, the children of Mrs. Bush by a former marriage, against Ella B. Bush, the only child of the marriage of Mr. and Mrs. Bush, and Raymond C. Bush and others, the children of Thomas B. Bush by a former marriage. As complainants, they alleged that Mrs. Pearl Bush survived Thomas B. Bush, and that they were entitled to share in the one-fifth interest in his estate, which descended to her. From the decree, denying relief and dismissing their bill, they have appealed.

The sole question here involved is one of survivorship.

The day was cold. Ice was on the roads and bridges. Just as Mr. and Mrs. Bush, in their car, had passed over Big Creek bridge, the car turned sharply to the right and ran off of the road into a bar pit, which was about four feet deep in water. Persons nearby went promptly to the scene of the accident. The car had turned over and the wheels were upside. Mr. Bush was in the water "flat on his back, face up, floating towards the bank". Two white men and a Negro pulled him out of the water, and one of the white men began giving him artificial respiration.

Two of the first three witnesses, who arrived at the scene, testified for the appellants that they saw no evidence of life in Mr. Bush, though they did not express a positive opinion that he was dead. The tracks on the bridge veered nearly to the bannister on the left, and thence back to the right; but the car struck neither bannister. There was nothing to evidence the application of the brakes. Both Mr. and Mrs. Bush had suffered from heart trouble. He was afflicted with what is known as "ox" heart. His physician had advised him against driving a car. But such advice was not followed. No autopsies were performed, though the death

certificate in each instance, gave drowning as the cause of death. The length of time to cause death from drowning, according to medical evidence, is variable, depending somewhat on the physical condition and stamina of the victim. The body of Mrs. Bush was not recovered until thirty or forty minutes after the wreck, when the car was pulled out of the water. It was found in the back seat. Neither the doors nor the windows were shown to have been open at that time. Of course, Mrs. Bush's body was then lifeless.

From this evidence, succinctly the appellants maintain this theory: Mr. Bush had an ''ox'', or greatly enlarged, heart. He was not physically capable of driving a car. The veering of the tracks and the non-application of brakes indicated that he suffered a heart attack as he was crossing the bridge. He must have been dead a minute or two after the car ran into the bar pit, because he was floating on the water when the first persons arrived. If he had drowned, his body would have sunk beneath the water. According to medical evidence, it would have taken several minutes, in the course of nature, for Mrs. Bush's lungs to fill with water. Under the circumstances, she must have lived longer than Mr. Bush and was, therefore, his survivor.

Conceding to this theory all probable weight, the fact remains that Mrs. Bush also had been suffering from a heart ailment. While Mr. Bush was advised not to drive a car, he, in fact, ignored such advice, and drove the car practically wherever he went. The failure of the car to strike either bannister, on an icy bridge, could just as well be attributed to control on the part of the driver. The non-application of the brakes on a bridge in that condition could likewise indicate good judgment on the part of the driver. If Mr. Bush was dead when the car ran into the bar pit, the question arises as to how he got out of the car and into the water. It was not shown either that the windows were down or that the doors were open.

Evidently he fell out, was thrown out, or got out. Speculation is an unsafe guide in making the selection. But, if he opened the door and got out, most assuredly he was not dead at that time. There is no basis for a valid adjudication as to the time when Mrs. Bush's breath left her. It must be remembered that she was a heart sufferer too. Who knows the terrific shock which she underwent? And the physical condition of the victim has much to do with the length of time required for drowning. Thus there is no escape from the conclusion that the time of her death is pure conjecture.

 No presumption of survivorship exists in our state. We follow the common law. The doctrine is "where two or more persons perish in the same disaster and there is no fact or circumstance to prove which survived, there is no presumption of survivorship". 16 Am. Jur., Sec. 40, p. 33. See 25 C. J. S., Death, Sec. 11, p. 1070. See also Fleming v. Grimes, 142 Miss. 523, 107 So. 420, 45 A. L. R. 618, where this principle was recognized as follows: ". . . there is no presumption that any one of the deceased parties survived the other, in the absence of proof . . .", and likewise, no presumption ". . . that all died at the same moment".

The evidence must determine; and "the burden of proof is placed on him who claims survivorship, so that, if there is no proof offered by the person bearing the burden of proof, the result is his failure to meet a condition precedent to his success." 16 Am. Jur., Sec. 40, p. 33. See also 25 C. J. S., Death, Sec. 11, p. 1071.

 When there is no proof either as to survivorship or simultaneous death in a common disaster, the expediency of settling property rights necessitates the assumption of simultaneous death. 25 C. J. S., Death, Sec. 11, p. 1071; 16 Am. Jur., Sec. 41, p. 34.

Since the proof failed to show the survivorship of Mrs. Bush, we would rest the decision at this point, except for an expression in the oral opinion of the learned

trial judge. He had correctly stated that, since Mississippi has no statute on the subject, the common law applies; and that where two or more persons die in a common disaster, there is no presumption that either of the deceased parties survived the other. Immediately following that announcement the court observed: "The presumption is that they died at the same time". Evidently the court was thinking of the necessity of assuming simultaneous deaths in order to settle property rights, where there is no proof either as to survivorship or of a simultaneous death in a common disaster, as stated above. But there is no presumption at all of simultaneous death. ██ When proof is offered, the evidence alone must govern and there can then be neither assumption nor presumption.

But, when we look to the evidence adduced by the appellees, these facts appear: One of the men, who helped to get the body of Mr. Bush out of the water, and who immediately began artificial respiration, testified that after the body was placed on the embankment Mr. Bush gasped for breath three different times in the interval of three or four minutes between the first and last. At the last gasp, his muscles quivered. About a teacup of water gushed out of his nose and mouth as the pressure of artificial respiration was being given.

The opportunity of this witness for observation was better than that of the two witnesses for the appellants. Besides, their evidence was not necessarily in conflict with his. A nephew, who claimed to have been present when artificial respiration was being given, testified that he saw Mr. Bush breathe and that the body was warm. Another witness testified that, on the way to the clinic, the body was warm; that after arrival at the clinic he saw and felt perspiration on Mr. Bush's forehead and that, following the perspiration, Mr. Bush became cold. One doctor, testified that he would not say that a body could perspire after death. True, there was opinion

medical evidence that Mr. Bush did not drown, but it was frankly admitted that the only way to determine the cause of death, with certainty, is by autopsy, and of course, such was not performed.

If the burden had been on the appellees rather than the appellants, the preponderance of the evidence established the fact that Mr. Bush survived his wife, rather than vice versa. Hence, the chancellor reached the right result. It must be remembered, too, that the appeal is from the final decree, and there is no adjudication therein in regard to the presumption which he erroneously announced.

In this case, the chancellor was sitting as the trier both of the facts and of the law. Under Rule 11 of this Court, we would not reverse a jury verdict because of misdirection to the jury, unless the error was harmful. For that reason, we would not reverse the chancellor for misdirection to himself, especially since he reached the right result and no harm resulted.

Affirmed.