## CITY OF JACKSON *v.* BRIDGES

No. 42182 April 9, 1962 139 So. 2d 660

*E. W. Stennett, W. T. Neely, Lipscomb & Barksdale,* Jackson, for appellant.

*Robert G. Nichols, Jr., W. E. Gore, Jr.,* Jackson, for appellee.

LEE, P. J.

This litigation arose out of the rezoning of the property involved herein from commercial to residential.

Two plots of land were involved. As stipulated, the first plot is on the north side of the Old Canton Road and generally fronts 135 feet along the north side of Old Canton Road and runs north along the east line of Wayland Drive, an extension of the north and south leg of Old Canton Road, 200 feet. East of this tract is Briarwood Addition, Part 4. The other plot fronts on the south line of the Old Canton Road, directly across the street from the first plot, approximately 250 feet east and west, and fronting on the east side of the north and south leg of the Old Canton Road 450 feet.

W. P. Bridges, Sr., owned these two parcels when they were zoned commercially by the Board of Supervisors of Hinds County on August 8, 1958, and he still owns them.

The corporate limits of the City of Jackson were extended in March 1960, and these parcels and the surrounding community were included.

Subsequent to the original zoning order of the Board of Supervisors, no effort was made to have the Board rezone the property.

The plat of the nearby Briarwood Addition, Part 1, was filed for record on May 5, 1959.

There were 23 property owners within 160 feet, exclusive of streets, of this property. Charles J. Weeks and 17 others, constituting 18 of said property owners, and 74 other persons, residents of Briarwood Addition, Part 1, filed with the Council of the City of Jackson a petition, praying that these two parcels be rezoned from commercial to residential. The petition was submitted to, and approved by, the Zoning Committee of the City. Thereupon, the Council ordered the City Clerk to give notice to all parties in interest or affected thereby of the pending application to rezone this property, and that said cause would be heard at the City Hall at 10:00 A. M. Wednesday, July 20, 1960. The City Clerk published the notice in the manner and for the time required by law.

W. P. Bridges, Sr., and others, being the other five property owners in this particular area, filed with the City Clerk their Landowners' Protest, in which they stated that the property was zoned commercial by the Board of Supervisors of Hinds County on August 8, 1958; that notice of the petition of C. J. Weeks and others to change the property from commercial to residential use had been published; and that they wished to formally register their protest against any change in the present zoning.

There was a stipulation as to how all of the nearby property owners obtained their property; and the facts were stipulated as follows:

Charles J. Weeks and others testified that Floyd Taylor, an agent for W. P. Bridges Real Estate since 1900, made representations to him and his wife and to Oral S. Head and wife to the effect that both of the parcels

would be used for residential purposes. But W. P. Bridges, Sr., through his attorney, denied that Floyd Taylor had authority to make such representations.

W. P. Bridges, Sr., made no such statement to at least 16 owners and builders. He had no interest in or control over Sheppard Homes, Inc., or Bridges & Alexander Homes, Inc., or Scott Builders, Inc., or Carter & Fly, or McGehee & Gipson, or Lewis & Shanks Builders.

These two plots were zoned commercial before the plat of Briarwood Addition, Part 1, was filed.

United Gas Company has an easement for an 18-inch high pressure line, used for cross-country transmission of natural gas, which runs diagonally across the southwestern tip of one parcel and across the northeastern part of the other parcel. The regulations of the Federal Housing Administration prohibit that agency from insuring a loan on a house located within 100 feet of such a transmission line. But First Federal Savings & Loan Association of Jackson, Mississippi, and other lending agencies will make conventional loans on residential property located within 100 feet of a high pressure gas line.

The 92 persons, who signed the petition to rezone these two parcels, were residents of Briarwood Addition, Parts 1 and 11.

The average cost of the homes owned by petitioners Barnes, Weeks, Griffith, Head and Huddleston is $22,500.

Briarwood Addition, Part 1, lies immediately east of parcel one, which is north of the Old Canton Road, and the homes, owned by Charles J. Weeks and the others as named, are located in Briarwood Addition, Part 1.

The qualifications of L. T. Rogers, Jr., and Jack K. Mann, as appraisers of land were admitted. Rogers was of the opinion that, if the smaller tract is used commercially, it has a value of $14,850; but if used for resi-

dential purposes, it has a value of only $500. The larger tract has a commercial value of $49,875; but if restricted to residential, its value is only $8,900.

According to Jack K. Mann, the small tract, if used for commercial purposes, has a value of $17,000; and if used for residential purposes, its value would be $2,-000. In his opinion, the large tract has a value of $54,-000, if used for commercial purposes; but, if used for residential purposes, its value would be only $7,500.

Thus it appeared that, after these two parcels of land were zoned commercial by the board of supervisors on August 8, 1958, there was no effort on the part of the petitioners or anybody else to have such board to re-zone it. Then, shortly after this area was taken into the corporate limits of the City of Jackson, the petitioners began their efforts to have it rezoned from commercial to residential.

The City Council rezoned the property to residential. W. P. Bridges, Sr., appealed to the circuit court on bill of exceptions, which set out the facts as heretofore stated. The circuit court, on this appeal, held that the zoning by the board of supervisors became ineffective from and after the annexation of the territory to the City, and that the notice to rezone was improper and invalid. For that reason, he reversed the action of the City Council. From that judgment, the City appealed, and Bridges prosecuted a cross-appeal.

The City assigned and contends that the court erred in holding that the zoning by the board of supervisors was ineffective after the annexation of the property to the City; in holding that the notice for rezoning was improper and invalid; in holding that the City's adoption of the County use district was ineffective; and in reversing the City's action.

On the contrary, the appellee says that the circuit court was correct in its decision, but that it should have also adjudicated that the action of the City au-

thorities was arbitrary, unreasonable, confiscatory and capricious.

Obviously the appellee had due process: A petition to rezone was filed. Notice thereof was given. The appellee filed his protest and litigated the matter before the City Council. He then appealed from an order of the Council adverse to his contention.

When the zoned land in this area was added to the City of Jackson, it did not become thereby unzoned property. The City Council, as the successor to the board of supervisors, had the authority to consider rezoning the property, if a change was to be made. It also had the authority to deny such change. This was settled in Highland Village Land Co. v. City of Jackson, 243 Miss. 34, 137 So. 2d 549.

Of course it is well settled that zoning ordinances are constitutional in principle as a valid exercise of the police power "when reasonably related to the public health, safety, morals, or general welfare". Rhyne's Municipal Law, Zoning and Planning, Section 32-2, p. 812. "Thus, a zoning ordinance, valid generally, but as applied to a particular parcel so unreasonable as to result in a confiscation of property, is invalid as to such parcel." Ibid. 813. Again Rhyne says: "Zoning measures are invalid where the public interest is slight and the private party will suffer great injury." Ibid. 815. The author also says: "One who plans to use his property in accordance with existing zoning regulations is entitled to assume that the regulations will not be altered to his detriment unless the change bears a substantial relation to the public health, safety, morals, comfort or general welfare." Ibid. 825. Again Rhyne also points out: "Zoning is not static, and zoning restrictions are subject to change. Thus a municipality may amend its zoning ordinance whenever it deems conditions warrant such change." Ibid. 821-2. "Before rezoning it must be shown that there

was some mistake in the original zoning or that conditions in the neighborhood have changed so as to warrant rezoning." Ibid. 822. ■■ ■ "An organized neighborhood desire for rezoning, without more, is insufficient to justify rezoning." Ibid. 823. ■■ ■ "Rezoning is valid if it is reasonable, and invalid if it is unreasonable and arbitrary." Ibid. 823.

■■ ■ Rhyne also points out that "The determination of zoning authorities that there has been a change of conditions to warrant rezoning will not be disturbed if the question is fairly debatable." Ibid. 823. This principle is recognized in this jurisdiction. See Holcomb v. City of Clarksdale, 217 Miss. 892, 65 So. 2d 281; Adams v. Reed, 239 Miss. 437, 123 So. 2d 606.

■■ ■ In 101 C. J. S., Zoning, Section 37, pp. 744-5, it is said: "In determining the validity of zoning regulations, the public interest must be weighed against the right of individual owners, and while the effect of a regulation on the land values is not controlling, it is a proper element to be considered, since no basis for the exercise of the zoning power exists if the public gain is small compared with individual hardships and loss."

■■ ■ In Holcomb v. City of Clarksdale, supra, the opinion cited 62 C. J. S., Municipal Corporations, Section 226(12)b, p. 467, as follows: "Ordinarily a change in zoning regulations involving a single or a very few properties should be made only where new or additional facts or other considerations materially affecting the merits have intervened since the adoption of the regulations, and whether such a change will be permitted depends on whether the change is reasonably related to the public welfare." ■■ ■ The opinion also cited pages 567-8 of that work as follows: "*A person seeking a change in a zoning ordinance has the burden of proving a public need for the amendment in question.*" (Emphasis supplied).

■■ It should be kept in mind that aesthetic considerations alone do not justify zoning regulations; and where such regulations are designed merely to preserve the appearance of a designated neighborhood, they are invalid. 101 C. J. S., Zoning, Section 36, pp. 743-4. See also City of Miami Beach v. First Trust Co., 45 So. 2d 681, a Florida case, where it was said: "There must be a positive showing of physical, economic or social change rather than esthetic or group caprice to justify the release of zoning regulations. They will not be released at the behest of community or group pressure, if in so doing, constitutional guaranties are undermined."

■■ The evidence of Charles J. Weeks and others that Floyd Taylor, as agent of W. P. Bridges Real Estate, made representations that both of the parcels here involved would be used for residential purposes seems, from the stipulations, to be the main reason which was urged by the petitioners for a rezoning of this property. But the record further shows that Bridges, through his attorney, expressly stated at the time that Taylor had no authority to make such representations. Taylor did not testify. Consequently, it is obvious that the testimony of Weeks and others on this point was inadmissible. Declarations of an alleged agent off the witness stand cannot be testified to by others to show agency and its scope, although a witness can testify from the witness stand about his agency just as any other witness. Walters v. Stonewall Cotton Mills, 136 Miss. 361, 101 So. 495; Sparkman v. Hardy, 223 Miss. 452, 78 So. 2d 584.

The stipulation does not show that the rezoning of these parcels from commercial to residential is reasonably related to the public health, safety, morals, or general welfare.

In view of the proof as to the cost of several nearby homes, it would appear that the proposition of rezoning

seemed to stem from aesthetic or group caprice, based solely on the fact that a putative agent of W. P. Bridges, Sr., had told some of the parties that the two parcels would be used for residential purposes.

■■ ■ The petitioners had the burden of proving a public need for the change from commercial to residential. But according to this record they offered no evidence of new or additional facts or other considerations, materially affecting the merits which had intervened since the original zoning by the board of supervisors on August 8, 1958.

The attempted rezoning of these two parcels from commercial to residential so diminished their value as practically to amount to confiscation of the property.

In Jones v. City of Hattiesburg, 207 Miss. 491, 42 So. 2d 717, the City authorities had placed practically all of the right of way, 200 feet in width, in the residential zone. It was proposed to construct a warehouse building, 100 by 40 feet, on the right of way for the storage of freight. The City, on the ground that such construction would be in violation of the zoning ordinance, refused to issue a building permit for the warehouse. The opinion said that the location of the warehouse bore no substantial relation to the public health, safety, morals or general welfare as to prevent the continued use of the property for commercial purposes, and that the City's interpretation was unreasonable and arbitrary.

In City of Hattiesburg v. Pittman, 233 Miss. 544, 102 So. 2d 352, the Pittmans sought to have nine lots rezoned from residential to commercial because they were so shallow as to be undesirable for residential purposes; and, unless rezoned, as prayed for, they would be practically deprived entirely of the use of their property. They proposed to improve the property so that it would answer a need and be of benefit to the public.

The protestants produced practically no testimony that such rezoning "would not promote the health, safety, morals, and general welfare of the community". The opinion said that the action of the City authorities in refusing to rezone the property to commercial "was manifestly arbitrary and capricious and was not supported by any substantial evidence".

 From the record in this case, the evidence failed to show that there was a mistake in the original zoning. It was not shown either that new or additional facts, reasonably related to the public welfare, had intervened, or that the public gain was such as to require the individual hardship and loss which would be sustained by the appellee, if such rezoning should be approved. In other words, the petitioners failed to meet the burden which was required of them. A change of the use of this property from commercial to residential, under the evidence as stipulated in this record, would be unreasonable, arbitrary and capricious.

The learned Special Judge did not have the benefit of the opinion of this Court in the case of Highland Village Land Co. v. City of Jackson, supra, which was decided February 5, 1962. While he gave a different reason for his decision, he reached the right result in reversing the order of the City Council. Consequently the judgment will be affirmed. Daniels v. Bush, 211 Miss. 1, 50 So. 2d 563; Bowlin v. Dye, 214 Miss. 710, 59 So. 2d 327; Jackson v. Fly, 215 Miss. 303, 60 So. 2d 782; Dollar v. Board of Education, 227 Miss. 432, 86 So. 2d 489; De Fraites v. State, 227 Miss. 496, 86 So. 2d 664.

Affirmed.

*Gillespie, McElroy, Rodgers* and *Jones, JJ.,* concur.