ATTALA LOANS, INC., et al. *v.*
STANDARD DISCOUNT CORPORATION

No. 42819          March 16, 1964          161 So. 2d 631

*Rufus Creekmore, Lee B. Agnew, Wm. A. Busby,* Jackson, for appellant.

*Dunn & Singley,* Meridian, for appellee.

*John E. Stone,* Jackson, Amicus Curiae.

KYLE, P. J.

This case is before us on appeal by Attala Loans, Incorporated, and Clarence H. Hamilton, Jr., and Jerry R. Hamilton, defendants and cross-complainants in the court below, from a decree of the Chancery Court of the First Judicial District of Hinds County, rendered in favor of Standard Discount Corporation, complainant, making permanent a preliminary injunction theretofore issued, and awarding a money judgment in favor of the complainant and against the defendants, and dismissing the defendants' cross bill.

The record in this case shows that the appellee, Standard Discount Corporation, is a Mississippi corporation domiciled in Meridian, Mississippi, and is authorized by its charter to engage in the business of acting as a licensee lender under the Small Loan Regulatory Act of 1958 (Ch. 170, Laws of 1958; Section 5591-01 to Sections 5591-20, Code of 1942, Rec.) and the Small Loan Privilege Tax Act (Ch. 168, Laws of 1958; Sections 5591-31 to 5591-54, Code of 1942, Rec.). The record also shows that at all times mentioned in the bill of complaint Standard was engaged in the business of lending money as a licensee lender, holding a valid and subsisting license issued under the provisions of the Small Loan Privilege Tax Act, and paid all fees and furnished the necessary bond for the transaction of business under the Small Loan Regulatory Act. Stand-

ard, at no time, was engaged in the business of handling loans as a licensee broker under the Small Loan Regulatory and Privilege Tax Act.

The record also shows that Attala Loans, Incorporated, is a Mississippi Corporation domiciled in the City of Jackson, Hinds County, Mississippi, and is authorized by its charter to engage in the business of acting as a licensee broker under the Small Loan Regulatory Act and the Small Loan Privilege Tax Act; and that Attala, at all times mentioned in the bill of complaint, was duly licensed to act as a licensee broker under the provisions of the Small Loan Privilege Tax Act. Clarence H. Hamilton, Jr. and Jerry R. Hamilton were interested stockholders in Attala Loans, Incorporated.

This is a suit by Standard for an accounting and a money judgment against Attala for money had and received by Attala from borrowers as payments on notes owned by Standard, and for a preliminary injunction prohibiting Attala from making further collections on notes owned by Standard. The bill of complaint was filed by Standard on October 11, 1962.

It was stipulated and the record shows that, on August 2, 1961, Standard Discount Corporation, as licensee lender, and Attala Loans, Incorporated, as licensee broker, entered into a contract, a copy of which was attached as Exhibit "A" to the bill of complaint, and began doing business under the terms and conditions therein specified; and that subsequently thereto, on August 10, 1962, the same parties entered into a revised contract, a copy of which was attached to the bill of complaint as Exhibit "B", which later contract superseded the former one identified as Exhibit "A".

The two contracts spelled out the method and plan of doing business between the parties thereto, as well as the specific terms and conditions applicable thereto. The specific plan of the operations under the two contracts have been briefly summarized in an agreed stipu-

lation as follows: A person desiring a loan of money would apply to Attala, who in turn would submit the application for such loan to Standard. If Standard approved the application, Standard would advance the money for such loan to Attala, upon the delivery to Standard by Attala of the applicant's promissory note and security instruments, if any. All such notes were obtained from the applicant by Attala and all were made payable to Standard. Deeds of trust were made wherein Standard was direct beneficiary. For its services in arranging or obtaining from Standard the loans for its customers, Attala received certain fees from its customers as prescribed and limited by the Small Loan Regulatory Act. Such fees were included in the amount of the loan advanced by Standard.

Loans so made by Standard, through Attala as a licensee broker, were both secured and unsecured. Neither Standard nor Attala was engaged in the business of selling any tangible personal property and in no instance, to Standard's knowledge, were the monies which were loaned by Standard to Attala's customers used, directly or indirectly, as the purchase price of the property forming the security for such loan in a case where security was taken. Except for loans made by Standard through its licensee brokers, of which Attala was one, Standard loaned no monies and did not engage in the business of purchasing or otherwise acquiring notes or other forms of indebtedness secured by liens in the form of mortgages or deeds of trust on tangible personal property located in the State of Mississippi or elsewhere. The payment of all loans made by Standard to the customers of Attala, as above outlined, was guaranteed by Attala Loans, Incorporated, and by Clarence H. Hamilton, Jr., and Jerry R. Hamilton, individually.

It was further stipulated and agreed as follows:

(1) That, on August 23, 1962, Standard notified Attala, in writing, that the contract between Standard and

the defendants would be terminated, effective August 24 at 5:00 P.M.

(2)   That, on October 11, 1962, the date of the filing of the bill of complaint in this cause, there was outstanding on the loans made by Standard to Attala's customers the sum of $110,852.43; that as of September, 1962, the defendants had collected from the debtors of Standard on loans made by Standard to Attala's customers, the sum of $10,703.13, which monies were never forwarded to Standard, and had not yet been paid over to Standard by the defendants at the time of the trial. It was further stipulated that after the termination of the contract between the parties thereto, the defendants received and collected from Standard's debtors on loans made by Standard to Attala's customers the total sum of $1,975.57, which amount was subsequently paid over to Standard by W. A. Busby, Jr. under authority of a temporary injunction issued by the court after the filing of complainant's bill.

In its bill of complaint Standard alleged facts substantially as stated above and prayed for specific relief as follows:

1.   That a temporary injunction be issued prohibiting the defendants from receiving or collecting any further payments from the persons indebted to Standard or otherwise interfering in any manner with such collection; that W. A. Busby, Jr., who was named as an original defendant in the bill of complaint, be required to account to Standard for all funds belonging to Standard and held by him and pay same over to Standard immediately, and that a judgment be entered against him for all funds not so paid; and that on a final hearing the injunction be made permanent, that when such monies were so paid by W. A. Busby, Jr. the suit be dismissed as to him.

2.   That a judgment be rendered in favor of Standard against Attala Loans, Inc., and Clarence H. Hamilton,

Jr. and Jerry R. Hamilton in the sum of $10,703.13, together with all interest accrued thereon.

On October 16, 1962, defendants answered the original bill, admitting the execution of the broker-money lender agreement, but denying the remaining averments. As matters of affirmative defense the defendants averred that Standard was engaged in the business of lending money, secured by deeds of trust on tangible personal property located within the State of Mississippi, but failed to pay the statewide privilege tax levied on persons engaging in such activities and, therefore, was denied access to the courts of the State and could not maintain its suit.

On October 17, 1962, a decree was entered commanding the defendant, William A. Busby, Jr., to pay over immediately to Standard the funds in his hands, which represented collections made from customers of Attala after the termination of the contract between the parties as stated above, and temporarily enjoining Attala from collecting any further monies from said customers.

On October 30, 1962, Standard, the complainant, filed an amendment to its original bill in which it denied that it was engaging in any business or activity which would make it liable for the statewide privilege tax levied under Section 9341, Miss. Code of 1942, Rec., on persons engaged in the business of lending money secured by deeds of trust on tangible personal property located within the State of Mississippi.

As additional affirmative matter, the complainant alleged that it was engaged in the business of lending money through brokers under the provisions of the Small Loan Regulatory Act and the Small Loan Privilege Tax Act of 1958 (Sections 5591-01-54, Miss. Code of 1942), and that its operations were regulated and taxed solely under the provisions of those statutes, except for such taxes as might be due under the local privilege tax code. The complainant also affirmatively alleged that

Attala, as its broker, was subject to the provisions of the aforementioned Small Loan Acts; that all of the loans involved were negotiated by Attala, for which service it charged and received a fee; that under its contract with Standard and under the law Attala was charged with the duty and responsibility of seeing that every loan made was lawful and valid; and that for these reasons Attala was estopped to assert as a defense Standard's failure to pay the aforementioned privilege tax; that such defense violated the clean hands doctrine, and if sustained, it would result in the unjust enrichment of Attala.

On December 20, 1962, defendants filed another amendment to their answer, along with a cross bill. The amendment to the answer may be summarized as follows: The defendants denied generally all averred facts relating to estoppel, unclean hands and unjust enrichment; and the defendants alleged affirmatively that Standard was not only subject to the provisions of the Small Loan Regulatory Act of 1958 and the Small Loan Privilege Tax Act, but was also liable for the statewide privilege tax imposed by Code Section 9341 on persons engaged in the business of lending money secured by mortgages on tangible personal property; that Standard's failure to pay the aforesaid statewide privilege tax had rendered unenforcible all of the notes and deeds of trust held by Standard, which had been brokered through Attala; that Attala and the individual defendants, by their contract with Standard, had guaranteed the validity of all of said notes, and to protect their guaranty had on deposit with Standard as a reserve fund the sum of $20,565.75; and the failure of Standard to pay said tax placed them in a position of imminent peril both as to their guaranty and as to their reserve fund.

It was further alleged that Attala had paid the statewide tax above mentioned; that such payment in effect

was the payment of a tax which had been passed on to the defendants by Standard, and constituted a charge by Standard in excess of the maximum permitted to be received by lenders from borrowers under the provisions of the Small Loan Regulatory Act of 1958, and thereby made each loan contract absolutely void.

In its cross bill the defendants alleged that the failure of Standard to pay the statewide privilege tax imposed on finance companies by Code Section 9341, supra, and the indirect passing on of the tax to Attala, as stated above, made Standard liable for the penalties prescribed by Section 9346, Mississippi Code of 1942, which provides that if the holder of any such paper either directly or indirectly passes on to the consumer, or the dealer, the tax imposed thereby, the holder becomes liable for a penalty of $200 for each separate transaction involved; and that by reason of the aforesaid acts of Standard, which made the notes brokered by Attala unenforcible and which placed Attala in jeopardy as to its guaranty and as to its reserve fund, the defendants should be released from all obligations as guarantors and should have the reserve guaranty fund returned to them. The prayer of the cross bill was for the release and discharge of Attala and the individual defendants from any further obligations as guarantors, for a decree requiring Standard to pay over to them the reserve guaranty fund, and for a money decree against Standard awarding to cross-complainants the sum of $258,000 as statutory penalties for violation of Code Sections 9341 through 9351 of the Mississippi Code of 1942, Rec.

On January 7, 1963, Standard filed another amendment to its original bill, in which it denied that anything done by it imperiled the defendants as to their guaranty or as to the reserve guaranty fund, and denied that any privilege tax was ever passed on by Standard to Attala. In the amendment Standard averred that if

any such statewide privilege tax was paid by Attala, it was without the knowledge or consent of Standard. It admitted the existence of the guaranty fund and averred that the correct amount therein was $20,577.07, but denied that said fund should be released to Attala and denied that Attala and the individual defendants should be released from their guaranty. On January 14, 1963, Standard filed its answer to the cross bill, and in its answer denied generally all material averments therein contained whereby any liability was sought to be charged against it, and reaffirmed that it was subject only to the provisions of the Small Loan Regulatory Act of 1958 and the Small Loan Privilege Tax Act. It admitted that it had not paid the statewide privilege tax imposed by Code Section 9341, supra, but denied that it was liable therefor. It affirmatively alleged that all dealings between it and Attala were as money lender and broker, and that Attala had never been a ''dealer'' within the meaning of Code Section 9346, supra, which imposed the $200 per transaction penalty sued for; and it denied generally that cross-complainants were entitled to any relief whatsoever.

The cause was heard at the January 1963 term of the court upon the pleadings, exhibits and the agreed stipulation of facts and oral testimony on the question as to whether Standard had any notice of the applicability of the Finance Company Privilege Tax Act, or whether the defendants ever brought the possibility of the existence of such tax to complainant's notice. The issues presented to the lower court for its decision were defined by the respective parties as follows:

The defendants contended (1) that, since Standard did not pay the privilege tax imposed on finance companies by Sections 9341 through 9351, Standard should be denied access to the court for the relief sought by reason of the penalty provisions of Code Sections 9346; (2) that Standard was liable to the defendants for the

statutory penalty provided for in Code Section 9346, by virtue of said privilege tax not having been paid by Standard; (3) that the payment of the privilege tax imposed by Code Section 9341 by Attala constituted usury; if usury could be claimed by the defendants; (4) that the guaranty of the defendants had been jeopardized by failure of Standard to pay said tax; and (5) that Standard's failure to pay said tax entitled Attala to the return of its guaranty fund.

The complainant, Standard Discount Corporation, contended that its operations were governed solely and alone by the Small Loan Regulatory and Privilege Tax Acts, with which both it and the defendants had fully complied, and that the privilege tax imposed by Code Section 9341 on finance companies was not applicable to Standard; and further, that in any event, the defendants were estopped to plead the applicability of the provisions of the finance companies privilege tax statute under the "clean hands" and "unjust enrichment" doctrines of equity.

The chancellor found that the complainant, Standard Discount Corporation, was a licensee lender under the Small Loan Regulatory Act, and had paid the privilege license tax required thereunder as a licensee lender; that, according to the testimony of Mr. Clarence H. Hamilton, Jr., president of Attala Loans, Incorporated, a representative of the State Tax Commission approached him in November or December of 1961, and contended that there was a privilege tax due under Section 9341 et seq. Code of 1942; that Hamilton paid the privilege tax, and there was no argument that it was paid by him; that in December 1961 Hamilton confronted Mr. Robert B. Easterling, Vice President of Standard Discount Corporation with the fact that he had paid the privilege tax alleged to be due under Code Section 9341, and Mr. Easterling said to Hamilton, "We will not pay it — we are not liable for it;" and according

to the testimony of Mr. Hamilton, that was the only mention of the privilege tax ever made to Standard Discount Corporation.

The chancellor found that the complainant was not a finance company in the contemplation of Code Section 9341, and Attala Loan, Inc., was not a "dealer" under Code Section 9346. The chancellor found that there were many other differences between the Finance Companies privilege tax statute (Sections 9341-9351) and the Small Loan Privilege Tax Act, which made it abundantly clear to the court that it was not the intention of the legislature to make both acts apply to one and the same person on one and the same transaction, and thus to collect two privilege taxes for doing one piece of business; and that even if the complainant fitted under the definition of a finance company and was subject to the provisions of Section 9346, the defendants certainly would not be able to take advantage of that fact, because the complainant was not suing the borrowers on their notes or attempting to enforce any security instruments given by the borrowers; that the complainant was merely attempting to collect from the defendants monies which the defendants had collected from borrowers, and which the defendants had solemnly contracted in two separate instruments to remit to the complainant within forty-eight hours.

The chancellor found that the defendants were not acting equitably, honestly, conscientiously, and fairly, in attempting to retain the $10,703.13, which rightfully belonged to the complainant, and the defendants were estopped to plead, claim, or assert, as a defense any failure on the part of the complainant to pay a finance company privilege tax, whether legally due or not; that to permit the defendants to assert, plead or claim any such defense would be violative of one of the major maxiums of equity, that "He who comes into equity must come with clean hands," and to allow such a de-

fense to be asserted would result in an unjust enrichment of the defendants.

The chancellor was of the opinion that the cross bill should be dismissed, that the temporary injunction issued in the case should be made permanent, and that the complainant should be awarded a judgment against Attala Loans, Incorporated, and Clarence H. Hamilton, Jr. and Jerry R. Hamilton for the sum of $10,703.13, plus interest at the legal rate from October 11, 1962, the date of the filing of the original bill of complaint.

A final decree was therefore entered on January 21, 1963, in which it was ordered and adjudged that the defendants' cross bill be dismissed on its merits, and that the complainant Standard Discount Corporation, do have and recover from Attala Loans, Incorporated, and the individual defendants Clarence H. Hamilton, Jr. and Jerry R. Hamilton the above mentioned sum of $10,703.13, together with interest thereon from and after October 11, 1962, at the rate of six percent per annum, said interest amounting to the sum of $169.43. It was further ordered that the preliminary injunction theretofore issued by the court on October 17, 1962, be made permanent, and that the defendants be permanently enjoined from receiving, collecting, or otherwise interfering with the collection by the complainant of any monies due the complainant under any of the contracts, notes or security documents described in the bill of complaint, and that the complainant retain as its property the $1,975.57 paid over to the complainant by William A. Busby, Jr., under the terms of the decree granting the preliminary injunction.

The appellants have assigned and argued five points as grounds for reversal of the decree of the lower court:

(1) That the lower court erred in entering a decree against the appellants and in favor of the appellees.

(2) That the lower court erred in dismissing appellants' cross bill.

(3) That the lower court erred in holding that appellee was not liable for the privilege tax imposed on finance companies by Sections 9341-9351, Miss. Code of 1942, Rec.

(4) That the lower court erred in failing to hold that the appellee, under the applicable statute, was denied access to the courts of this State; and

(5) That the lower court erred in holding that appellants were estopped to plead as a defense to complainant's suit the failure of the appellee to pay the privilege tax imposed on finance companies by Code Sections 9341-9351, supra.

We think there was no error in the action of the lower court in entering a decree granting to the appellee the relief prayed for in the amended bill of complaint, or in dismissing the appellants' cross bill.

As stated above, the record shows that Standard Discount Corporation is a Mississippi Corporation authorized by its charter to engage in the business of acting as a licensee lender under the Small Loan Regulatory Act of 1958, and the Small Loan Privilege Tax Act of 1958, and that Standard, at all times mentioned in the bill of complaint, was duly licensed by the State Comptroller of Banks to act as a license lender under authority of the Small Loan Privilege Tax Act, and had paid all fees and furnished the necessary bond for the transaction of business as a licensee lender under the Small Loan Regulatory Act.

The Small Loan Regulatory Act, and the Small Loan Privilege Tax Act were enacted eighteen years after the enactment of Chapter 110, Laws of 1940, which, in its amended form, appears as Sections 9341-9351, Miss. Code of 1942. The administration of the Small Loan Regulatory Act and the Small Loan Privilege Tax Act was vested in the State Comptroller of Banks by Section 4 of the Small Loan Privilege Tax Act, Sec. 5591-34, Miss. Code of 1942, Rec. An applicant for a license to

engage in the business of handling loans or lending money under those two acts was required to obtain a license from the State Comptroller, and was required by Section 7 of the Small Loan Privilege Tax Act, Code. Sec. 5591-37, to pay a license fee of $200 to the comptroller at the time of the filing of his application for such license. The statute provides that all licenses issued under the provisions of said section shall be valid for a period of one year from the date of the issuance thereof. The statute also provides that within thirty days prior to the expiration of any valid and subsisting license issued thereunder, the holder thereof, if he desires to continue to engage in business shall file application for a new license in the same manner and under the same conditions, and shall pay therefor the requisite $200 license fee, which is declared to be an annual fee.

No plainer language could have been used by the legislature to define the manner in which any person who desires to engage in the business of handling loans or lending money under authority of the Small Loan Privilege Tax Act shall proceed to obtain the license which he must have to enable him to engage in such business. A person who has paid such license fee and has obtained such license from the State Comptroller, under Section 7 of the Act (Code Section 5591-37), may be compelled to pay any other privilege tax or fee required by law. But such person, in our opinion, is not subject to the penalty prescribed by Code Section 9346 for failure to pay such other privilege tax within the time prescribed for the payment of such tax. Code Section 9346 is a highly penal statute imposed on any person, firm, corporation or association doing business in this State without obtaining a license as provided by the statute, and without having paid the tax imposed by the Finance Companies privilege tax statute. The appellee in this case had obtained a license from the

proper state agency authorizing him to engage in the business of a licensee lender under the provisions of the Small Loans Privilege Tax Act. That act did not require that he obtain another license from another state agency before commencing operations as a licensee lender under the Small Loans Regulatory Act.

■■ Penal statutes are not to be extended in their operation to persons, things, or acts not within their descriptive terms, or the fair and clear import of the language used. 50 Am. Jur. p. 433, Statutes, Sec. 409 and cases cited. See also State v. Love (1933), 170 Miss. 666, 150 So. 196.

■■ In our opinion Code Section 9346 is not applicable to licensees doing business under the Small Loan Regulatory Act and the Small Loan Privilege Tax Act, who have obtained a licensee from the State Comptroller of banks and have paid the license fee required by that act; and there is no merit in the appellants' contention that the court erred in refusing to hold that the appellee in this case should be denied access to the courts of the state for the purpose of collecting the indebtedness sought to be recovered in the amended bill of complaint, and there is no merit in the appellants' contention that the court erred in dismissing the appellants' cross bill in which the appellants sought to recover the penalty of $200 for each separate transaction involved in the claim referred to in the appellants' cross bill. Attala was neither a "consumer" nor a "dealer" within the meaning of the terms as used in Code Section 9346.

■■ The purpose of the Small Loan Privilege Tax Act, as plainly stated in the Act, is to provide that persons engaged in the business of handling loans or lending money under the Small Loan Regulatory Act shall be subject to supervision by the Department of Bank Supervision. Section 20 of the Act (Code Section 5591-50) requires that all fees, license taxes and penal-

ties provided for in the act, which are payable to the Comptroller, when collected by him, are required to be deposited in a special and separate fund to be known as the "Small Loan Act Fund", and shall be expended by the Comptroller for the purpose of administering and enforcing the provisions of the Small Loan Regulatory Act and the Small Loan Privilege Tax Act.

The Small Loan Privilege Tax Act, however, is not primarily a revenue act; and Section 7 of the act itself expressly provides that the annual license fee to be paid by the licensee is in addition to any other privilege tax or fee required by law. The Finance Companies privilege tax statute, Code Sections 9341-9351, is a revenue statute imposing a tax of one-fourth of one percent on finance companies, as defined in Code Section 9341, engaged in the business of lending money secured by liens on tangible personal property located in the state, or engaged in the business of purchasing, discounting, or otherwise acquiring notes, trust deeds or other forms of indebtedness secured by liens on tangible personal property located in the state. There is nothing in the Small Loan Regulatory Act or the Small Loan Privilege Tax Act to indicate that it was the intention of the Legislature, by the enactment of those two statutes, to exempt licensee lenders qualified to do business under the provisions of those acts from the payment of any privilege tax levied by Code Section 9341, for which such license lenders might be liable under that code section, and we think the chancellor erred in holding that the appellee was exempt from the payment of that tax.

In this case, however, the chancellor was sitting as the trier of the facts and the law, and, as stated by the Court in Daniels et al. v. Bush et al., 211 Miss. 1, 50 So. 2d 563, we would not reverse the chancellor for misdirection to himself since he reached the right result and no harm was done.

■■ ■■ We think there was no error in the chancellor's holding that the appellants were estopped to plead failure of the appellee to pay the privilege tax imposed on finance companies by Code Section 9341 as a defense to the appellee's suit. Such plea on its merits, as we have already stated, constituted no valid defense to the appellee's suit. We find no reversible error in the record, and the judgment of the lower court is affirmed.

Affirmed.

*Lee, C. J., and Ethridge, Gillespie and Brady, JJ.,* concur.