PATTEESON, Justice:
These appeals arise from four separate-zoning actions initiated before the City Council of Jackson, Mississippi. The various landowners filed separate applications with the city council to have their respective properties rezoned from residential to commercial use. These applications were' considered simultaneously by the council,' and on November 9, 1965, separate orders' were issued denying the applications to rezone the properties. The. applicants appealed these cases to the Circuit Court of *556 Hinds County where they were simultaneously heard. The circuit court reversed the order of the city council and ordered that the property be rezoned from residential to commercial. From the orders of the circuit court reversing those of the city council these appeals are prosecuted and by agreement are consolidated for this hearing.
The property involved is in the triangle formed by the southern boundary of Highland Village Shopping Center, which shopping center abuts Northside Drive on the north; a frontage road to the west which abuts Interstate Highway No. 55 to its west; and Old Canton Road to the east. The property owned by Morgan and Fowler contains 9.63 acres, all of which is undeveloped. This property abuts Highland Village Shopping Center to the north, Old Canton Road to the east, a frontage road on the west and the property of Mrs. E. A. May and Shamrock Hill Subdivision to the south.
The property of Mrs. E. A. May comprises .85 acres which fronts on Old Canton Road to the east and borders the Morgan and Fowler property on the north and west, and Shamrock Hill Subdivision to the south. jThis property is an undeveloped vacant lot.
To the south of these properties is located Shamrock Hill Subdivision which comprises the remainder of the property in the triangle and upon which are located the homes of the remainder of the applicants.
In November 1958 the Zoning Committee of Hinds County was petitioned to rezone the northern 300-foot tract bordering Northside Drive on which is now situated Highland Village Shopping Center. Although the petition was opposed by adjacent landowners, the property was nevertheless rezoned commercial. Thereafter, ■on November 30, 1959, the predecessors in title of Morgan and Fowler initiated the first of several attempts to rezone the property immediately south of and adjacent to the 300-foot tract constituting Highland Village Shopping Center. This rezoning petition was denied.
On March 17, 1960, the City of Jackson extended its limits to the north and this property, as well as that adjacent to it, was included therein. Since this property was residential in character at the time of annexation, it was thereafter classified as residential by the city.
In May 1960 the predecessors in title of Morgan and Fowler again petitioned to rezone the property, and though the zoning committee recommended a commercial classification to the city council, the council nevertheless denied the application. This application resulted in litigation in the chancery court by way of injunction with the ultimate result that the order of the city council was upheld.
In October 1961 a third application for rezoning of the same property was filed with the zoning committee requesting that the same be rezoned commercial so that it could be utilized for the construction of a mall-type shopping center. The zoning committee recommended that the property remain residential, and no appeal was taken to the city council from this advisory ruling.
On December 12, 1962, Morgan and Fowler, who had acquired the controversial property, initiated a request for a rehearing for the purpose of rezoning the land in question from residential to commercial. This application was subsequently withdrawn without hearing.
On September 28, 1964, Morgan and Fowler initiated another request to have the property rezoned. This request was approved by the zoning committee which recommended to the city council a commercial reclassification. This recommendation was rejected by the city council by a two to one vote. The circuit court on appeal from the order of the city council found that the proponents for commercial rezoning had more than met the burden of proof imposed upon them by law and had shown by *557 a clear preponderance of the evidence that the highest and best use for the property for both the individual owners and the City of Jackson would be a commercial rating. It reversed the order of the council as being arbitrary and unreasonable and rezoned the property from residential to commercial.
Throughout the previous hearings concerning the rezoning of the property in this triangle, the owners of the residences in Shamrock Hill Subdivision have opposed the rezoning of any of the property. In the instant dispute, however, the owners of each of the lots in said subdivision have also applied to have their property rezoned and have opposed the application of Morgan .and Fowler only in the event that their own applications for rezoning should be denied. This, of course, signifies their understandable desire not to be the last residential property owners in the triangle. The May property has not heretofore been involved in the hearings for rezoning, and, in fact, the owners have never before taken any affirmative action to have any of the properties in the vicinity declared commercial. However, Mrs. May now requests that her .85 acres be rezoned commercial.
The protestants are landowners across Old Canton Road to the east of the properties in question. None of the protestants own property within the area sought to be rezoned. The contest is therefore between all the property owners within the triangle who seek reclassification from residential to commercial and the owners and occupants •of expensive and exclusive residential areas east of Old Canton Road. The protestants fear that their properties will be devalued by nearly-adjacent commercial zoning, particularly since their properties are, as stated, extremely desirable and expensive. The protestants submitted evidence to the effect that their property was purchased because •of its residential character and that those who have purchased since these lands were annexed by the city in 1960 relied also upon the city’s residential classification. Additionally, they set forth the increased traffic that would normally flow through the area with the construction of a mall-type shopping center. They contend that this traffic increase would necessarily be hazardous and troublesome to the residents in the area along Old Canton Road since it is one of the major traffic arteries to the city, and as such is already overburdened.
The affidavits of Jack K. Mann and Lewis L. Culley, Sr. for the protestants, both highly qualified in the appraisal of real estate and its best uses, were to the effect that the development of shopping centers does adversely affect adjacent residential property. However, each concluded that the highest and best use for the property sought to be rezoned, so as to least affect the protestants, would be the rezoning of the property as commercial, but limiting the use thereof to multiple-family garden-type apartments.
The affidavits of several land experts for the applicants indicate that the property of Morgan and Fowler is below the grade of the surrounding property since it was “bulldozed” from a beautiful wooded area to a level open area some seven or eight feet below the grade of the adjacent property; that it is presently little more than a weed patch; and that the proximity of the property to Interstate Highway No. 55, a major four-lane heavily traveled roadway, with its attendant noises, has in fact, if not in law, transformed this property from residential to commercial. The evidence of the residents who live within the triangle is to the same effect, with the exception that though they had in the past protested rezoning, the traffic on Interstate No. 55, as well as the shopping center to the north, has in reality changed their property from residential to commercial so that it is now difficult to rent the property and unrealistic and highly improbable that the same could be sold as residential property.
The testimony of Mrs, E. A. May is to the effect that she and her husband owned their property continuously since 19.41; that *558 she is presently vested with title therein; that the property has changed in this period of time from farm and residential property to commercial property; and that the only possible use which she can make of her land is for commercial purposes. Her son, Dr. May, testified that the best use that could be made of the property so as not to harm the various residents would be the construction of an attractive dental clinic and unless the property is rezoned commercial, his mother will be deprived of any use whatever of said property.
The appellants on these appeals assign as error the action of the circuit court in reversing the orders of the city council and thereby approving the application of the landowners for rezoning the properties from residential to commercial and in finding such orders of the council to be arbitrary, unreasonable and unsupported by substantial evidence.
Though not assigned specifically as error, the appellant contends that the June 22, 1960, order of the city council, which declined to rezone the properties from residential to commercial, is res judicata of the present application. The burden was upon the appellees to allege and prove a material change or changes of circumstances occurring after the June 1960 order of the city council which denied rezoning in order to surmount the plea of res judicata. City of Jackson, Miss. v. Wilson, Et Al., 195 So.2d 470 (Miss.1966), and Westminster Presbyterian Church v. City of Jackson, 253 Miss. 495, 176 So.2d 267 (1965). The resulting question for determination is whether the landowners seeking reclassification of their properties have met this burden of proof.
After careful consideration of the record, we are of the opinion that there were several intervening material changes between the order of June 1960 and the present application. Specifically, it reflects that the resident landowners within the triangle now seek rezoning whereas heretofore they have opposed it. We note also that a large portion of the lands sought to be rezoned was heretofore subject to restrictive covenants by deed which limited their use to residential purposes. In the past the city has universally honored these and similar covenants. These restrictions expired on December 31, 1964, and these are the first applications for rezoning since their expiration. We note additionally that the property of Mrs. May is included in this application for rezoning, thus changing the subject of the suit to the extent of her property. These changes are uncontra-dicted, material and sufficient, in our opinion, to overcome the plea of res judicata without elaboration as to other transformations in the property. We are of the opinion, therefore, that this plea is not well taken.
The final issue for determination is whether the order of the city council was reasonable in view of the testimony submitted to it. A careful consideration and study of the record before us clearly portrays the property sought to be rezoned to be of a commercial nature and presently unsuited for residential purposes. In fact, with the possible exception of increased traffic along Old Canton Road the evidence is uncontradicted that the best use of this property both for the respective owners and the city would be its reclassification from residential to commercial. The Morgan and Fowler property has been “bulldozed” to the grade level of the adjacent shopping center to the north and though there are some unsavory aspects of this exploitation, tending to indicate wilful desecration for “blockbusting” purposes, the fact remains, from the record, that Morgan and Fowler were not parties to it. The expert witnesses of the protestants, though testifying that the rezoning of the property would affect the value of adjoining lands, nevertheless testified that the best use of the property within the triangle would be for commercial purposes, though this was limited to its use commercially for high-type residential apartment buildings. We conclude that the evidence on behalf of those 'seeking reclassification is so overwhelming *559 that the city council erred in not heeding it.
These types of cases are unfortunate in that we all hold dear the thoughts of home and residence. We do not like to envision change or encroachment with regard thereto, but nevertheless change is inevitable, and when change is shown to have occurred by positive proof, this fact must be reckoned with by those in authority so that the best interest of the landowners and the city will be served. We are of the opinion that there is ample evidence to support the conclusion of the circuit court that the orders of the city council, which refused to rezone these properties from residential to commercial, were arbitrary, capricious and not supported by substantial evidence. City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660 (1962); City of Hattiesburg v. Pittman, 233 Miss. 544, 102 So.2d 352 (1958); and Bradley v. City of Jackson, 153 Miss. 136, 119 So. 811 (1928). The judgments of the lower court are affirmed.
Affirmed.
ETHRIDGE, C. J., and JONES, BRADY, and SMITH, JJ., concur.