319 So.2d 214 (1975)
Dr. John B. DICKS, Owner of Glenburney, Appellant,
v.
CITY OF NATCHEZ, Mississippi, et al., Appellees.
No. 48216.
Supreme Court of Mississippi.
September 15, 1975.
Rehearing Denied October 20, 1975.
Brandon, Handy & O'Beirne, Natchez, for appellant.
Zuccaro, Riley, Pintard & Brown, Gwin & Gwin, John T. Green, Natchez, for appellees.
Before PATTERSON, INZER and SUGG, JJ.
PATTERSON, Justice.
This appeal is from a judgment of the Circuit Court of Adams County affirming an ordinance of the City of Natchez dated September 13, 1972, which rezoned a tract of land from B-2 (commercial) to O-L (open land). The tract had been rezoned on May 1, 1972, with other land from O-L (open land) to B-2 (commercial) by an ordinance of the city. The issues before the Court are whether the last rezoning ordinance was legally effective to correct an alleged mistake of the prior rezoning ordinance and if so, what effect this rezoning would have upon an option of purchase for a use consistent with the B-2 classification.
On September 7, 1971, Dr. Dicks, the appellant, filed an application with the City of Natchez to rezone sixteen acres of open land to B-2 (commercial) for the construction of a 120-bed hospital and necessary hospital-type facilities. The land was described as "part of City Tax Map 69, Block 1, Lot 1 (see map attached)." We discern the area sought to be rezoned is a portion of a larger tract known as Glenburney and is situated on the east side of John R. Junkin Drive. Pursuant to the application the Natchez Metropolitan Planning Commission, hereinafter commission, *215 considered the area for rezoning. Its minutes of January 20, 1972, reflect the following:

Glenburney, east side of John R. Junkin Drive. Proposed hospital site, 16.5 acres located on the west portion of Glenburney property located on the east side of the John R. Junkin Drive, as depicted by a proposed Site Development Plan for Glenburney, Natchez, Mississippi, by Virden and Roberson, Ltd., architects, Greenville, Mississippi, which plan is on file in the office of the Natchez Metropolitan Planning Commission of Adams County, City Hall, Natchez, Mississippi.
* * * * * *
Using the site plan submitted by the applicant, Mr. Winter described the different parcels and noted the park area and buffer park strip provided between the housing development and a nursing home and the Glenwood Subdivision. He noted that the John R. Junkin Drive frontage of the proposed hospital site, for a depth of approximately 300 feet, was excluded from the land to be considered for rezoning so that it would not be used for commercial purposes and would remain O-L... .
At this meeting Dr. Dicks' attorney stated for the record that the original developers of the proposed hospital were no longer connected with the project, but that the applicant for rezoning expected to pursue the objective of hospital construction on the basis of the site layout and other drawings.
At a subsequent meeting the commission again considered the application for reclassification and concluded with the following recommendation to the Mayor and Board of Aldermen of the City of Natchez:
The Commission considered first the application for the re-classification of a portion of the Glenburney property from O-L to B-2 to permit construction of a hospital. In the discussion, it was brought out by Mr. West that additional hospital beds are badly needed in Natchez. It was moved, seconded, and so ordered to recommend to the Mayor and Board of Aldermen the rezoning of the Glenburney property from O-L to B-2, the amendment to carry the following conditions:
1. That the hospital be developed substantially as proposed and indicated on the site plan submitted December 17, 1971, except as minor modifications may be approved by the Planning Commission.
2. (Not applicable.)
3. (Not applicable.)
4. That upon failure to develop the area, in general accord with the submitted site plan, within one year, no permit for the construction of any structures within the area shall be issued until the area has been examined and rezoned for its appropriate use.
5. (Not applicable.)
The mayor and board of aldermen, following the commission's recommendation, gave notice to the public of a hearing to be held on March 13 to consider the reclassification. The property described in the notice follows:
Reclassify portions of the Glenburney property located on the east side of the John R. Junkin Drive, as depicted by a Proposed Site Development Plan for "Glenburney", Natchez, Mississippi, by Virden and Roberson LTD., Architects, Greenville, Mississippi, which plan is on file in the Natchez Metropolitan Planning Commission of Adams County Office, City Hall, Natchez, Mississippi.
A. Hospital site, 16.5 acres located on the west portion of Glenburney and extending from John R. Junkin Drive to the rear lot line. Re-classify from O-L Open Land to B-2 Commercial; except that portion of the property within 300 feet of John R. Junkin Drive would remain O-L Open Land.
*216 For clarity we note that the 300-foot exception to the 16.5-acre tract of Glenburney sought to be rezoned for a hospital site abuts John R. Junkin Drive for a distance of 727.9 feet and, by our computation, approximates five acres.
At the March 13 meeting of the mayor and board of aldermen the issue of reclassification was presented and discussed. The appellant presented as a witness Mr. Virden, an architect, who stated that the requirements previously suggested by Arch Winter and the members of the planning commission had been met. The appellant's attorney then requested, after noting the suggested changes had been made, that the board of aldermen approve the rezoning. The issue, however, was not resolved and the meeting was continued until March 27. The matter was discussed, objections heard, at this and several recessed meetings until it was ultimately moved on May 1 and unanimously carried that the hospital site, containing 16.5 acres, be rezoned from O-L (open land) to B-2 (commercial).
The ordinance of the city zoning the property as open land was thereafter amended to reflect its new classification. The rezoned property was described as:
Portions of the Glenburney property located on the east side of John R. Junkin Drive in the City of Natchez, Mississippi, as depicted on Map of Subdivision of Glenburney prepared by Jordan, Kaiser & Sessions, Civil Engineers, which plan is on file in the office of the Plannning Commission of the City of Natchez, Mississippi.
A. Hospital site, containing 16.8 acres, more or less, located on the north portion of Glenburney and extending from John R. Junkin Drive to the rear lot line. Re-classify from O-L Open Land to B-2 Commercial.
It will be noted that the 300-foot (5 acres) exception on the east side of John R. Junkin Drive was not included in the amended ordinance.
On July 6, 1972, more than two months after rezoning the hospital site to commercial and after time for appeal of the ordinance had expired, the appellant agreed to sell three acres of the property to Charles Laird of the Laird Funeral Home for $50,000. The three acres optioned for sale lies largely within the 300 feet immediately east of the John R. Junkin Drive. One thousand dollars to bind the contract was accepted by the appellant and a deed was executed and acknowledged on July 17 in furtherance of the option. The City "Chart of Uses Permitted" designates in excess of 140 uses that may be made of B-2 (commercial) property, one of which is a funeral home. However, the option to purchase was not exercised due to the rezoning to open land.
Prior to July 24, 1972, there came to the attention of the mayor and board of aldermen that a mistake had been made in rezoning to commercial a portion of the Glenburney property and a notice was given on this date for another public hearing concerning rezoning in view of the alleged mistake. The mistake asserted was the inclusion of the 300-foot buffer strip adjacent to John R. Junkin Drive with the remainder of the Glenburney property when it was zoned commercial.
Thereafter, additional meetings were held in which the matter was discussed and debated. The commission expressed its viewpoint that its previous recommendation to rezone commercial did not include the 300-foot buffer strip. The commission therefore recommended to the mayor and board of aldermen that the 300-foot strip now be reclassified to open land so that it would accord with the commission's original intention.
This recommendation was given due consideration in an open hearing on September 13, 1972, by the city fathers and resulted in the buffer strip being reclassified as open land.
The first issue is whether there was a mistake in the ordinance of May 1, 1972, *217 which was properly corrected by the ordinance of September 13, 1972. The basis for rezoning is: a mistake in the original zoning or a change in the neighborhood conditions. Paine v. Underwood, 203 So.2d 593 (Miss. 1967), and City of Jackson v. Bridges, 243 Miss. 646, 139 So.2d 660 (1962).
The record before us reveals, we think, a mistake by the mayor and board of aldermen in rezoning the buffer strip from open to commercial land. The original meeting of the commission had before it the statement of Mr. Winter, a planning consultant, that the strip was excluded from the hospital site. While the commission's recommendation to the city was inconsistent with the discussion, nevertheless, the legal notice by the city to the public prior to its rezoning hearing excluded the 300-foot buffer zone and again, the buffer zone was not mentioned in the city's rezoning ordinance. These inconsistencies are of sufficient gravity, in our opinion, for the city to later determine that it had made a mistake. It was at least more than fairly debatable and we note that the appellant does not argue by way of contradiction the fact of mistake, but rather contends that the rezoning to commercial was an accomplished fact and he was entitled to rely upon the validity of the ordinance and to sell his property in accord with commercial zoning.
Unfortunately, the mistake did not come to the attention of the attorneys, the commission or the city until the appellant had contracted to sell approximately three acres of the buffer strip property for a funeral home and undoubtedly, a presumption extends to the validity of an ordinance upon which the property owner is entitled to rely. Martinson v. City of Jackson, 215 So.2d 414 (Miss. 1968); Fowler v. City of Hattiesburg, 196 So.2d 358 (Miss. 1967); and Lewis v. City of Jackson, 184 So.2d 384 (Miss. 1966).
The primary question is whether there was sufficient evidence to overcome the presumption of the validity of the first rezoning ordinance. In Halloway v. Halloway, 189 Miss. 723, 198 So. 738 (1940), it was held that a presumption must give way to the facts established by the evidence. From a review of the record we conclude, as did the circuit judge, that there was ample evidence to support the city in rezoning the buffer strip property to open land in order to correct the mistake of its former ordinance and that this act was neither arbitrary, capricious nor confiscatory.
It is further argued, however, that the last ordinance does not refer specifically to a mistake as a basis for rezoning. This contention is not persuasive to invalidate the last ordinance since we held in Paine v. Underwood, 203 So.2d 593 (Miss. 1967), that a recitation of a change of conditions was not necessary to the validity of the ordinance where there was evidence of a change of conditions. By analogy the present essential is whether there was evidence of a mistake revealed in the record. We have previously concluded there was ample evidence of such a mistake, leaving the appellant's contention meritless.
The final issue is whether the appellant's loss of sale was so inequitable that it prohibited the city from enacting the last rezoning ordinance. The offer to purchase for $50,000 was bona fide and it is of course to be regretted that the sale was lost by the actions of the city. However, in Westminster Presbyterian Church v. City of Jackson, 253 Miss. 495, 176 So.2d 267 (1965), the church sought rezoning from residential to commercial for use as a gasoline station site. It alleged several factors indicative of a change of conditions which would support rezoning, one of which was a diligent effort to sell the property without success. The evidence showed that the value of the property for a filling station site was $45,000 and there was an agreement to purchase at this figure if the church could obtain rezoning of the property. The proof further revealed that for residential purposes the property *218 was worth only $11,000. The trial court found no change of circumstances to warrant rezoning and this Court affirmed, holding that the ordinance of the city was not confiscatory. We quoted with approval the general rule found in 62 C.J.S. Municipal Corporations § 227(15) c (1949) as follows:
"A variance to construct or operate a service station or garage should not be granted merely because such use of the property will be more convenient or profitable to the owner, or because he will suffer some financial disadvantage or hardship if denied such use; it is essential that applicant should suffer some unusual hardship from the literal enforcement of the regulation different from, and greater than, that suffered by other property owners in the district. The variance or exception should not be granted unless the proposed use of the property is within the spirit of the zoning regulations." 253 Miss. at 506, 176 So.2d at 272.
We recognize this quotation relates to a variance to an existing ordinance, but nevertheless are of the opinion that it has present application since the case also holds:
"... [T]he City Council had the right and the duty to review the whole situation and protect the residential property owners to the east of appellant's property. As I understand the record, this whole block is residential property. The Courts should not constitute themselves as a Zoning Board for a municipality." 253 Miss. at 506, 176 So.2d at 272.
See also Grayson v. City of Birmingham, 277 Ala. 522, 173 So.2d 67 (1963), wherein it was held that financial loss is not the ultimate test for reclassification, but rather the overall needs of the public, the requirements of the city and the rights of the individual are to be considered in rezoning.
We are sympathetic to the appellant's loss, but from the record before us we are constrained to the opinion that the city had the right, indeed the duty, to correct a mistake that it had formerly made, and particularly is this so when it is observed that the buffer strip was returned to a status in conformity with the zoning of adjacent lands not involved in this controversy.
Affirmed.
GILLESPIE, C.J., RODGERS, P.J., and SMITH, ROBERTSON, WALKER and BROOM, JJ., concur.