JACKSON, et al. *v.* FLY.

Nov. 3, 1952

No. 38505 6 Adv. S. 17 60 So. 2d 782

*Wynn, Hafter, Lake & Tindall,* for appellants.

*John T. Smith* and *W. D. Jones,* for appellee.

Lee, J.

This case involves a controversy as to liability for payment of workmen's compensation benefits. Its determination rests on answers to two questions: (1) Did Jessie Beach, the subcontractor, have eight or more workmen regularly in his business when his employee, John S. Fly, the claimant, was injured. And if this was true, (2) is the Jackson Brothers Lumber Company, the primary contractor, liable to Fly for compensation benefits on

account of an injury sustained on its job, when Beach had failed to secure such benefits.

The employers, subject to the provisions of our Workmen's Compensation Act, under Section 3, Chapter 412, Laws of 1950, are: "(1) *Every person,* firm and private corporation, including any public service corporation, but excluding, however, all non-profit charitable, fraternal, cultural or religious corporations or associations, *that has in service eight or more workmen or operatives regularly in the same business, or in or about the same establishment, under any contract of hire, express, or implied."* (Emphasis supplied.)

In the third paragraph of Section 4 of said chapter, it is provided: "In the case of an employer who is a subcontractor, the contractor shall be liable for and shall secure the payment of such compensation to employees of the subcontractor unless the subcontractor has secured such payment. In such cases the number of employees of the subcontractor and not the contractor shall be the factor determining liability."

It will be seen from the above quotations that "Every person . . . that has in service eight or more workmen or operatives regularly in the same business, or in or about the same establishment, . . ." subject to the exclusions therein named, is required to provide compensation for his employees. And, if he has eight or more such workmen and is a subcontractor and fails to secure the payment of such benefits, the primary contractor must do so.

W. E. and J. F. Jackson, trading and doing business as Jackson Brothers Lumber Company, contracted with Mr. and Mrs. James White for a stipulated consideration, to build a residence for them in Rosedale. Subsequently, on November 15, 1950, the lumber company entered into a contract with Jessie Beach whereby he agreed to furnish all labor and tools for the construction of the residence for the sum of $1,650. Beach was a building

contractor, and was also engaged in constructing for other parties three houses in the City of Cleveland. He spread out his employees, using such number as was necessary for each particular job. Fly had been working for about six weeks on these several projects, as the exigencies of the situation required. On December 1, 1950, while working on the White residence, a nail, which he was driving, glanced, struck him in the eye, and put it out.

On the hearing before the referee and the Commission, the following evidence was adduced: Fly named ten employees who worked for Beach on these several projects, and testified that all of them worked together on the Brown job. He was positive that eight or more were working on the date of his injury, although only four were actually employed on the White residence. The lumber company promptly reported Fly's injuries to its carrier. The insurance company, as it began the payment of benefits, reported to the Commission that, while the number of Beach's employees varied from time to time, it found indications that he had a total of ten. After further investigation, it reported to the Commission that it had definitely determined that, during the month of October or November, Beach was employing eight carpenters, all working at the same time, and expressed the opinion that there was a good chance that he was employing eight persons on the date of Fly's injury. Besides, Beach's payrolls, prior to, at the time of, and immediately following, Fly's injury, were in such amounts as to indicate that he was employing at least eight men.

Beach, called by the claimant as an adverse witness, admitted that the ten employees named by Fly did in fact work for him, but he contended that not over seven worked at the same time. He produced no record and could not testify from memory as to which men worked on particular days. He maintained that he worked only seven men at the time, and that his reason for so doing was to avoid liability under the Compensation Act.

The rational interpretation of Beach's testimony is that he had as many as ten persons available for work and working for him. But he had the idea that, if he worked only seven of these men on any particular day, he would not be liable, under the Compensation Act, to pay benefits thereunder to an injured workman. He knew that, if he worked eight men, he would be liable, and, if he admitted that such number worked for him and he had not secured the payment of compensation, he would be subject to criminal prosecution under Section 36, Chapter 354, Laws of 1948. Hence he had a very strong personal reason for refusing to admit that he ever worked as many as eight men at the same time.

Now in 58 Am. Jur., Workmen's Compensation, Section 87, p. 640, it is said: "Under an act applicable to employers having not less than the specified number of workmen or operatives regularly employed, which defines the term 'regularly' as meaning all employments in the usual course of trade, business, profession, or occupation of the employer, **(Hn 1)** the question whether the number of men employed is such as to bring the employer within the act is to be determined by the character of the work in which they are employed, however brief or long, and not by the character of the employment, whether regular, casual, occasional, periodical, or otherwise, so long as they were hired to do work in the common or unusual business of the employer."

On the question as to whether the employer "regularly" employs the minimum number, Larson's Workmen's Compensation Law, Volume 1, Section 52.20, p. 769, says: "Since the practical effect of the numerical boundary is normally to determine whether compensation insurance is compulsory, an employer cannot be allowed to oscillate between coverage and exemption as his labor force exceeds or falls below the minimum from day to day. *Therefore, if an employer has once regularly employed enough men to come under the act, he remains*

*there even when the number employed temporarily falls below the minimum.''* (Emphasis supplied.)

The Missouri Workmen's Compensation Act has a provision similar to ours as regards regular employment. In the case of Fowler v. Baalman, 234 S. W. 2d 11, decided in 1950, the Missouri Supreme Court had this to say on that question: ''The word, 'regularly,' is not synonymous with constantly or continuously. The work may be intermittent and yet regular. Men may be regularly but not continuously employed . . . The word 'regular' is used in the act as an antonym of the word casual, and, when an employee is *regular,* or 'regularly employed,' he is not casual . . .''

Neither is it necessary that the minimum number of workers shall be employed on the particular job. In Palle v. Industrial Commission, 7 Pac. 2d 284, 81 A. L. R. 1222, a Utah case, the tenth syllabus says: ''In determining whether the requisite number of men is employed to subject the employer to the Workmen's Compensation Act, it is immaterial that some of them are working on a job at another place so long as all of them are doing work connected with the employer's business.''

In Feazell v. Summers, 234 S. W. 765, an Arkansas case, decided in 1950, Summers was hurt while working at one of Feazell's water well rigs in Arkansas. Feazell had four of these rigs, but two of them had been operating for about three months in Missouri. The Arkansas Compensation Law was effective when five or more men were working. It was contended that the four operatives of the rigs in Missouri could not be counted to bring Feazell under the provisions of the Arkansas Law. The opinion analyzed and cited with approval Palle v. Industrial Commission, supra; and it was held that the operations in Missouri did not destroy the continuity of the employment relation in Arkansas, and that those operatives should be counted to make out the requisite five employees.

With the foregoing and like authorities as a criterion, we are of the opinion that the great weight of the evidence showed that Beach regularly employed eight or more workmen in his business, in spite of his contention that he never had more than seven working at any particular time. Thus, under the terms of our Act, he was required to secure the payment of benefits to his workmen.

Immediately after Fly was hurt, the lumber company reported his injury to its insurer and informed it that Fly was an employee of Jessie Beach, a subcontractor. The owners of the lumber company, by this act, showed that they thought Beach was employing eight or more men. They, of course, knew that he had not provided compensation for his workmen; and they evidently thought that they were responsible to his injured employee, who was working on their job.

By Section 4, Chapter 354, Laws of 1948, the contractor was liable for compensation to an injured employee of his subcontractor, if such subcontractor failed to secure payment therefor, notwithstanding such subcontractor did not employ as many as eight persons. Mills v. Barrett, (Miss.) 56 So. 2d 485. Besides, in that case it was said that: ''It is obvious that the purpose of the legislature was to prevent the general contractor from escaping liability by employing subcontractors who were not financially responsible and leaving the employees unprotected.'' But that section was amended by Section 4, Chapter 412, Laws of 1950, and it is now provided that the subcontractor must have eight or more employees before he is required to secure compensation benefits ' his employees and before the primary contractor is required to secure such benefits when the subcontractor fails in that respect.

So, (Hn 2) if the subcontractor, in his business, employs eight or more men, then the primary contractor must guarantee the payment of compensation benefits to such

of the subcontractor's workmen as may be in service on that particular contract. Of course, the contractor would not be liable for injuries to the employees of the subcontractor which might be sustained or incurred on jobs other than that of the contractor.

In Wilmer Lee Sones v. Southern Lumber Company (Miss.), 60 S. 2d 582, we quoted with approval from Dick v. Gravel Logging Co., 152 La. 993, 95 So. 99, as follows: "The object of the statute is to shift the burden resulting from the accidents of our intense industrial activities from the employer to the general public. It is humane in its purpose, and its scope should be enlarged rather than restricted. Its provisions should be liberally construed, so as to include all services that can be reasonably said to come within them."

We are of the opinion, from the great weight of the evidence, that Beach had eight or more workmen regularly in his business at the time of Fly's injury; that the lumber company had good reason to know Beach's status; and that it is liable to Fly for the compensation benefits. Thus our answer to the original questions, in each instance, is in the affirmative.

(Hn 3) The trial referee and the Commission held that Beach did not have eight or more workmen regularly in his employ, but awarded compensation on the theory that it was the purpose and intention of the lumber company and its carrier to provide benefits in a case such as this, and that they were estopped by their acts and conduct to deny liability. On appeal, the circuit court held that, according to the great weight of the evidence, Beach had eight or more workmen regularly in his business at the time, reversed the finding of the Commission in that particular, and affirmed the award. Obviously such action was taken in accordance with Section 20, Chapter 412, Laws of 1950, which provides in part: "If prejudicial error be found, the same shall be reversed and the circuit court shall enter such judgment or award as the Commis-

sion should have entered." Compare Lucedale Veneer Company v. Rogers, 211 Miss. 613, 48 So. 2d 148 and 53 So. 2d 69; Wilma Lee Sones v. Southern Lumber Company, supra.

Although the Commission reached the right result, it assigned the wrong reason therefor. But the affirmance of the award was justified under such cases as Daniels v. Bush, 211 Miss. 1, 50 So. 2d 563, and Bowling v. Dye, (Miss.) 59 So. 2d 327.

It therefore follows that the judgment of the circuit court ought to be, and is, affirmed.

Affirmed.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.

## ON MOTION TO CORRECT JUDGMENT

March 16, 1953          24 Adv. S. 34          63 So. 2d 536

Lee, J.

Appellee herein has filed a motion to correct the judgment entered in this cause, pursuant to the opinion delivered November 3, 1952, so as to award 5% damages on the judgment of $2,500.00, being $25.00 a week for 100 weeks.

On a like motion in the case of M. T. Reed Construction Co., et al. v. Robert E. Martin, No. 38,538, this day decided, it was held that the proper allowance of damages is 5% on the total amount of weekly installments accrued and unpaid to the date of the judgment of affirmance.

The motion to correct the judgment is therefore sustained to the extent of allowing 5% damages on the total amount of weekly installments accrued and unpaid on the date of the affirmance of this cause.

Motion to correct judgment sustained in part.

*McGehee, C. J.,* and *Kyle, Arrington* and *Ethridge, JJ.,* concur.