# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2014-SA-01480-SCT

*CRYSTAL FINNIE*

*v.*

*LEE COUNTY BOARD OF SUPERVISORS*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/22/2014 |
| TRIAL JUDGE: | HON. PAUL S. FUNDERBURK |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | RON L. WOODRUFF |
| ATTORNEYS FOR APPELLEE: | MICHAEL CHASE |
| | WILLIAM C. MURPHREE |
| | GARY L. CARNATHAN |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND RENDERED - 03/10/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**LAMAR, JUSTICE, FOR THE COURT:**

¶1.     A female corrections officer in a juvenile-detention facility in Lee County was fired for refusing to wear the proper uniform.  After she filed for unemployment benefits, the Mississippi Department of Employment Security (MDES) Administrative Law Judge (ALJ) found in her favor and awarded her benefits, and the MDES Board of Review affirmed. But the Lee County Circuit Court reversed the Board of Review on appeal.  Because we find that Finnie did not commit misconduct as our law defines it, we reverse the circuit court's judgment and reinstate the Board of Review's decision.

**Facts and Procedural History**

¶2.     Crystal Finnie worked as a corrections officer at the Lee County Juvenile Detention Center from 2004 to 2009.  Lee County Sheriff Jim Johnson fired Finnie because she "refused to wear proper attire." Finnie had worn the prescribed uniform—a department-issued shirt and pants—until she converted to a Pentecostal denomination in August 2008. At that point, Finnie testified, she began to feel convicted about her work uniform because according to her new church, women should wear only skirts.

¶3.     In September 2008, according to Finnie, her pastor discussed the skirt-wearing requirement with Johnson. Finnie testified that Johnson had told her that he respected and admired her for standing up for what she believed in and as a result of the conversation with her pastor, "Sheriff Johnson shook my hand, and he promised me that he would help me resolve it. . . . And get back to me." Johnson did not get back to Finnie.

¶4.     Six months after that conversation with Johnson, Finnie began wearing skirts to work because, she said, the employee manual states that the Lee County Sheriff's Department would not discriminate against anyone for their religious beliefs. She wore the skirts for approximately two weeks, until March 16, 2009. That day, Finnie's shift supervisor told her, for the first time, that by wearing the skirt she was violating the uniform policy. That same day, her second-level supervisor, Sergeant Steve White, also told Finnie she was violating the uniform policy. White added that, because of the violation, Finnie would be suspended for three days without pay.  Finnie asked to speak directly to Johnson "because [she] didn't want to be suspended or anything of that nature." When she spoke to Johnson later that day,

he told her that "he was still waiting on one more phone call to come through to confirm whether or not [she] could wear [her] skirt . . . ." He also told her that she would not be suspended yet, that he would get back to her by the end of her shift that day, and that, in the event he did not get back to her, she could wear her skirt to work the next day.

¶5. After the conversation with Johnson, Finnie returned to her post in the juvenile-detention center. White telephoned Finnie just before her shift ended that day to tell her that Johnson had decided she "could either wear [her] pants or turn in [her] letter of resignation." Finnie asked White if she could take vacation the following day, and White said she could. Finnie never returned to work but continued to use vacation days—on the advice of her attorney—in the hope that Johnson would change his mind about terminating her. During that time her attorney sent a letter to Johnson urging him to change his position. Several weeks later, while still using vacation days, Finnie telephoned White to see if Johnson had changed his mind. White told her to "just put [her] pants back on and come to work." Finnie testified that the conversation with White gave her the impression he did not know whether Johnson had changed his mind, so she made an appointment with him. At her meeting with Johnson, he informed her that she was being terminated because she violated the dress-code policy.

¶6. A short time later, Finnie filed a claim for unemployment benefits. A claims examiner initially denied her claim, but the ALJ reversed the claims examiner and awarded Finnie benefits. The Board of Review affirmed the ALJ, and Lee County appealed. The circuit

court reversed the Board of Review and denied Finnie benefits.[1] Now Finnie appeals to this

Court.

## Standard of Review

¶7.    This Court employs a well-established standard of review in these appeals:

> Judicial review of an [MDES] ruling is limited to determination of whether the decision is supported by substantial evidence . . . . This Court must review the record to determine whether there is substantial evidence to support the Board of Review's findings of fact, and further, *whether, as a matter of law, the employee's actions constituted misconduct disqualifying him from eligibility for unemployment compensation benefits* . . . .

> Miss. Code Ann. § 71-5-513(A)(1)(b) (Rev. 1989) provides that an individual may be disqualified for unemployment benefits if he was discharged for "misconduct connected with his work." The employer has the burden of showing by "substantial, clear, and convincing evidence" that the former employee's conduct warrants disqualification from eligibility benefits . . . .

*City of Clarksdale v. Mississippi Emp't Sec. Comm'n*, 699 So. 2d 578, 580 (Miss. 1997)

(quoting *Foster v. Mississippi Emp't Sec. Comm'n*, 632 So. 2d 926, 927 (Miss. 1994))

(emphasis added). Mississippi Code Section 71-5-531 also governs judicial review of the

Board of Review's decision. That statute provides:

> In any judicial proceedings under this section, the findings of the Board of Review as to the facts, if supported by the evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law.

---

[1]Multiple remands for additional evidentiary hearings took place in this case, but relating the details of them would add nothing of value to this opinion.  In short, the ALJs held three separate hearings and the Board of Review decided the case twice. The ALJs and the Board of Review found in favor of Finnie every time. MDES continues to support Finnie's position by way of an *amicus curiae* brief.

Miss. Code Ann. § 71-5-531 (Rev. 2011). Finally, this Court "affirm[s] where an agency or lower court reaches the right result for the wrong reason." *Falco Lime, Inc. v. Mayor and Alderman of City of Vicksburg*, 836 So. 2d 711, 725 (Miss. 2002) (citing *Jackson v. Fly*, 215 Miss. 303, 311, 60 So. 2d 782, 786 (1952)).

**Discussion**

¶8. Under Mississippi law, a claimant who "was discharged for misconduct related to his work" is not entitled to unemployment benefits. Miss. Code Ann. § 71-5-513(A)(1)(b) (Rev. 2011). So MDES's threshold task here was to determine if misconduct had occurred, such that unemployment benefits were unavailable to Finnie. But neither the ALJ nor the Board of Review (in two separate orders) found that Finnie had committed misconduct. In fact, they did not analyze misconduct at all. Rather, in the proceedings below, the parties, the ALJs, the Board of Review, and the circuit court focused almost entirely on the constitutional issue of whether the First Amendment—and cases interpreting it—protect Finnie from being denied benefits for exercising her sincerely held religious belief that she should not wear the prescribed uniform.[2] As a result of that singular focus, none of them made an explicit finding that Finnie's actions did or did not amount to misconduct.

¶9. But, as we have held before, "[t]he *threshold question* is whether the charges against [the terminated employee] constituted misconduct under the law . . . ." *Coahoma Cty. v.*

[2]So the dispute up until now has been whether Lee County has met its burden under the test we prescribed in *Mississippi Employment Security Commission v. McGlothin*, 556 So. 2d 324 (Miss. 1990). Under that test, Lee County must show that it has a "compelling interest" in its uniform policy and that it pursued that interest "by the least restrictive means." *Id.* at 329 (citing *Wisconsin v. Yoder*, 406 U.S. 205, 215, 92 S. Ct. 1526, 32 L. Ed. 2d 15 (1972)).

*Mississippi Emp't Sec. Comm'n*, 761 So. 2d 846, 849 (Miss. 2000) (emphasis added). Because we find that Finnie's actions did not constitute misconduct, we do not reach the First Amendment issue. *See Dixie Elec. Power Ass'n v. Hosey*, 208 So. 2d 751, 753 (Miss. 1968) ("Since the trial court reached the right result, although basing his conclusion exclusively upon constitutional considerations which we do not reach, this Court will not reverse where the same result must inevitably follow upon another ground.").

¶10.     Beginning with *Wheeler v. Arriola*, 408 So. 2d 1381 (Miss. 1982), this Court's misconduct cases support the conclusion that Finnie's actions here do not amount to misconduct under the unemployment-benefits statute.  In *Wheeler*, this Court discussed and adopted the holding of a Wisconsin Supreme Court case that had

> held that the meaning of the term "misconduct," as used in the unemployment compensation statute, was conduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer, came within the term. Mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion were not considered "misconduct" within the meaning of the statute.

*Id.* (citing *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 296 N.W. 636 (1941)). This Court also explained that conduct may even be adverse to the employer's interest and warrant termination, but still not be "misconduct" under the unemployment statute so long as the conduct is not "wilful, wanton, or equally culpable." *Id.* (quoting *Jacobs v. California Unemployment Ins. Appeals Bd.*, 25 Cal. App. 3d 1035, 102 Cal. Rptr. 364 (1972)). On

6

another occasion, this Court has announced that "[m]isconduct imports conduct that reasonable and fair-minded external observers would consider a wanton disregard of the employer's legitimate interests." *Mississippi Emp't Sec. Comm'n v. Phillips*, 562 So. 2d 115, 118 (Miss. 1990).

¶11. Relying on a phrase from *Wheeler*, Lee County argues that Finnie's actions were a "deliberate violation" of the dress code and therefore misconduct. We reject such an *ipso facto* reading, as we have before. *See, e.g.*, *Coahoma Cty. v. Mississippi Emp't Sec. Comm'n*, 761 So. 2d 846 (Miss. 2000). In *Coahoma County*, Jacqueline D. Wallace was responsible for monitoring security cameras and reporting any suspicious activity. *Id.* at 847–848. Wallace's supervisor was caught sexually harassing inmates and covering up security cameras to hide what he was doing. *Id.* Wallace failed to report the times her supervisor covered the cameras because she was on break and did not see it happen. *Id.* Even though Wallace was required to get someone to relieve her at her post before she took a break, she did not always do that, and her employer knew she did not always do that because the officers who were supposed to relieve her had a history of either not showing up or leaving before she returned. *Id.* at 851.

¶12. Coahoma County discharged Wallace "for putting the safety of the inmates and employees in jeopardy because she did not report another employee for covering up a monitoring camera." *Id.* Despite the fact that she technically had violated her employer's policy, the Board of Review "found that Wallace did not willfully and deliberately violate any rule of the employer and that she performed her work to the best of her ability." *Id.* The

7

circuit court affirmed the Board of Review and this Court unanimously affirmed the circuit court, noting that "the conduct may be harmful to [the] employer's interests and justify the employee's discharge; nevertheless, it evokes the disqualification for unemployment insurance benefits only if it is wilful, wanton, or equally culpable." *Id.* at 850 (quoting *Wheeler*, 408 So. 2d at 1383) (alterations omitted).[3]

¶13.    With this exacting standard in mind, we find that Finnie's behavior here did not amount to misconduct. Perhaps most importantly, Finnie never wore a skirt to work after Johnson told her she could not. And the employee manual expressly allowed other department employees to wear skirts and contained a nondiscrimination policy Finnie thought applied to her situation.[4] In short, Finnie's conduct was not "willful, wanton, or equally culpable."

---

[3]Although not cited by the ALJ, the Board of Review, or the circuit court, we note there is an MDES regulation directly on point. Mississippi Administrative Code Section 20-1-101:308.00, which defines "misconduct . . . [f]or purposes of Mississippi Code Section 71-5-513," states that "conduct mandated by a religious belief or the law is not misconduct."

[4]Our conclusion here also is supported by comparing Finnie's actions with actions we *have* held constituted misconduct. *See, e.g.*, *Mississippi Emp't Sec. Comm'n v. Harris*, 672 So. 2d 739, 740 (Miss. 1996) (on multiple occasions teacher showed R-rated movies to underage students without parental consent, without previewing the movies for content or subject matter, and in direct violation of an instruction from his principal); *Mississippi Emp't Sec. Comm'n v. Percy*, 641 So. 2d 1172, 1176 (Miss. 1994) (employee falsified time cards); *Richardson v. Miss. Emp't Sec. Comm'n*, 593 So. 2d 31, 35 (Miss. 1992) (employee failed to maintain a valid driver's license, even though a valid license was a condition to his employment and his job duties required driving); *Miss. Emp't Sec. Comm'n v. Flanagan*, 585 So. 2d 783, 785 (Miss. 1991) (daycare employee struck child on head in violation of discipline policy, and did so multiple times even after being counseled for such behavior).

## Conclusion

¶14.    For the foregoing reasons, we find that Finnie's actions do not constitute misconduct as a matter of law. We therefore reverse the judgment of the Lee County Circuit Court and reinstate the Board of Review's determination, rendering judgment in Finnie's favor.

¶15.    **REVERSED AND RENDERED.**

      **WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, COLEMAN AND BEAM, JJ., CONCUR.  MAXWELL, J., NOT PARTICIPATING.**