# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2025-WC-00069-COA

**PHYSICIANS' PAIN AND SPINE SPECIALISTS, PLLC**                    **APPELLANT**

**v.**

**DANA KLUCZKOWSKI**                                                      **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 12/06/2024 |
| TRIBUNAL FROM WHICH APPEALED: | MISSISSIPPI WORKERS' COMPENSATION COMMISSION |
| ATTORNEYS FOR APPELLANT: | DONALD RAFFERTY BLAKE THORNBRO |
| ATTORNEY FOR APPELLEE: | BENJAMIN SETH THOMPSON |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | AFFIRMED - 12/09/2025 |
| MOTION FOR REHEARING FILED: | |

**BEFORE CARLTON, P.J., McDONALD AND EMFINGER, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1.     Dana Kluczkowski ("Dana") filed a petition to controvert on June 16, 2021, alleging a workplace injury under the Workers' Compensation statute. Physicians' Pain & Spine Specialists PLLC ("Physicians") denied that it was subject to the Workers' Compensation statute because it had fewer than five employees, and, further, Dana did not sustain a compensable workplace injury. The administrative judge (AJ) ruled in favor of Dana on both issues, and the Mississippi Workers' Compensation Commission affirmed. Physicians appealed alleging error as to the Commission's resolution of both issues and contending that the company was not subject to the Workers' Compensation statute, and that Dana did not suffer a compensable injury.

**FACTS AND PROCEDURAL HISTORY**

¶2. Dana was employed as a medical assistant at Physicians, which was located in Gulfport, Mississippi. Physicians is a pain management clinic that provides treatments for spine and muscle pain issues. Dr. Shawn Wu, the owner of Physicians, opened the clinic in March 2015.

¶3. Dana worked for Physicians on two separate occasions: first in late 2019 through the beginning of 2020 and then again from April 14 through June 8, 2021. Dana performed medical-technician duties, scheduled patient appointments, and prepared the injection room for patient procedures. After Wu performed each injection, Dana was responsible for cleaning the room.

*Petition to Controvert*

¶4. On Wednesday, June 16, 2021, Dana filed a petition to controvert, alleging that on Thursday, May 21, 2021, she suffered an injury while assisting a patient. Dana further stated that her co-worker Summer Denning entered the exam room after hearing a noise caused by the incident. Dana stated in her petition to controvert:

> On or about May 21, 2021, Claimant was assisting a patient. The patient had just gotten injections. The patient advised that he did not need assistance getting off of the table. As Claimant was walking out of the door . . . the patient stumbled off of the table. Claimant turned around to assist the patient and try to catch his fall. The patient fell onto Claimant and slammed her into the C-Arm machine causing significant injuries. Claimant reported the incident to her boss, Dr. Shawn X. Wu, and requested to go to the ER. Dr. Wu would not allow her to go to the ER and gave her an injection of something into her collar bone without consent.

¶5. Later in the day, Dana left Physicians and went to the emergency room at Singing

2

River Hospital, where she was given a sling for her arm and a brace for her ankle. Dana went home that evening. The following day, May 22, 2021, Dana went to Memorial Hospital in Gulfport for further evaluation. She received x-rays of her right shoulder and ankle. She was diagnosed with an injury to both areas and prescribed physical therapy treatment, as well as a walking boot to relieve the pain in her right foot. She was also referred for an orthopedic evaluation. Her medical records included the following instructions:

> Ortho Trauma
> Upper extremity bruise
> You have a bruise (contusion) on your arm, wrists, hand, or fingers. Symptoms include pain, swelling, and skin discoloration. No bones are broken. This injury may take from a few days to a few weeks to heal. During that time, the bruise may change from reddish in color to purple-blue, to green-yellow, to yellow-brown.

¶6.    Dana returned to work on Monday, May 25, 2021. Physicians terminated Dana's employment in June 2021, approximately one month following the alleged injury.

¶7.    On June 15, 2021, Dana was evaluated by Dr. Judith Smith for persistent ankle and shoulder pain. An MRI of her right ankle, performed on August 25, 2021, revealed a small amount of fluid was present in the dorsal forefoot, but no fracture. On October 4, 2021, Smith prescribed physical therapy two to three times per week for six weeks, and she administered a subtalar joint injection for ongoing foot pain.[1] Smith scheduled a four-week follow-up appointment.

---

[1] Her medical records included the following:

> We will obtain weight bearing radiographs of the right ankle on the patient's way out of the office today. Order is written for Physical Therapy for right ankle sprain protocol, right shoulder ROM/strengthening, 2-3 times weekly for 6 weeks. She will follow up in 4 weeks for re-evaluation.

¶8.     Dana's petition to controvert and Wu's answer to the petition to controvert reflected conflicting accounts of the incident and the nature of Dana's injuries.  Dana maintained that her right shoulder and ankle were injured when the patient fell against her.

¶9.     Wu, on behalf of Physicians, filed the answer to Dana's petition to controvert, in which he provided his version of events:[2]

> Dana had prepared the exam room with the necessary supplies for him to administer an injection to a patient's back.  He performed the injection and left the room after the procedure.  Dana remained in the room with the patient while he sat up and stepped off the examination table.
>
> Dana did not sustain an injury at work.  He performed a physical examination of Dana's right shoulder which concluded with him administering a trigger point injection for pain into Dana's right shoulder.  All of this transpired after Dana reported that the patient had "touched" her shoulder and that her "shoulder hurt" (and that Dana was not injured).  Further, Dana never told him about an injury.  He is an expert and after a physical examination of Dana, no injury was revealed.  Additionally, Dana did not ask for permission to go to the doctor for her work injury.
>
> Dana later changed her description of the injury, stating it occurred after the patient fell on her when he attempted to step off the exam table.  Weeks after the date of injury, Dana stated that her right ankle was injured.

¶10.     Wu conceded that Dana remained alone in the room with the patient after the procedure and while he stepped off the examination table.  However, Wu disputed that any workplace injury occurred.  In addition, he claimed that she failed to report a work-related accident.  He asserted that he examined her right shoulder post-incident, and as a "board-

---

[2]  The validity of the answer was questioned by the Commission since Wu filed it despite not being a licensed attorney in Mississippi, and Physicians' is identified as a professional limited liability company.

certified expert," his examination was inconsistent with Dana's version of events about her injury.

¶11. Further, in his answer, Wu denied that they were subject to the Workers' Compensation Law because Physicians did not meet the minimum requirements for Mississippi Workers' Compensation insurance. However, on May 23, 2021, two days after Dana was injured, Physicians obtained coverage.

*Compensability Hearing*

¶12. On March 27, 2024, a workers' compensation administrative judge held a hearing on Dana's petition to controvert. Prior to the hearing, Physicians did not file a pre-hearing statement as required by Mississippi Workers' Compensation Procedural Rule 2.5.[3] The two issues presented were whether Physicians was obligated under the Workers' Compensation Act to carry workers' compensation insurance, and whether Dana sustained a compensable injury in the course and scope of her employment with Physicians.

¶13. Dana introduced the medical records and affidavit of Gulfport Memorial Hospital

---

[3] Rule 2.5 ("Prehearing Statement; Setting of Hearings") provides in relevant part:

> Before a matter can be set for hearing on the merits, each party must submit a complete Prehearing Statement with appropriate documents attached. The completed Prehearing Statement shall follow the form prescribed by the Commission and be completed per its instructions. Attorneys shall file the Prehearing Statement electronically with the Commission through the Attorney Transmittal Online System (ATOS).

Miss. Workers' Comp. Comm'n Proc. R. 2.5.

(exhibit 1) and the insurance coverage verification (exhibit 2).[4]  Since Physicians did not submit a pre-hearing statement,[5] its exhibits were introduced for identification purposes only (including a statement from the patient involved in the incident, who Wu claimed said he did not fall on Dana, but only "grazed" her, and Dana's medical records from Physicians and Singing River Hospital, the hospital Dana went to on the day of the alleged accident).  The photographs of the injection room where the alleged incident occurred were admitted into evidence, but the patient's statement and medical records from Singing River Hospital and Physicians were not.

¶14.    Summer Denning, receptionist and also long-time friend of Dana, stated that she was employed at Physicians from April 2021 through June 2021.[6]  Denning testified that she was employed on the day of the incident and that after she heard a loud noise and scream from the examination room, she entered and observed Dana.  Denning further testified that Physicians employed seven people and that the following individuals were present at the clinic each day: Breanna Cuevas, Dana Kluczkowski, Shannon Manix, Maja Wu, Dr. Shawn Wu, a female whose name she did not know, and Summer Denning.

¶15.    Next, Dana gave a statement about the account of events and about how the injury

----

[4] The insurance verification showed that Physicians secured workers' compensation insurance two days after Dana's incident.

[5] The record reflects that multiple requests for submission of the prehearing statement were made.  Finally, the AJ issued email correspondence to both counsels, noting that Physicians had not filed the required pre-hearing statement.  The AJ further advised that the court would "entertain a motion to strike any evidence that the employer and carrier submits at the hearing."

[6] Apparently, Denning and Dana were employed at the same time.

occurred, which she attached to her petition. As stated above, she reiterated that she was a medical assistant at Wu's office, assisting him with multiple tasks, including injections. On the morning of May 21, 2021, she was in the injection room with a "very tall, very large" male patient. After asking the patient if he needed assistance, which the patient declined, Dana proceeded to clean the injection room. The next thing she realized was the patient attempting to get off the table, and during this attempt, he pushed Dana into a C-arm machine. As a result, her right foot rolled, and her right shoulder slammed into the C-arm machine. She recalled that she screamed, and Summer ran into the room. Dana immediately informed Maja (by phone because she was out of the office) and Wu. Maja then came to the office. Dana testified that she asked both Maja and Wu for permission to go to the hospital, saying, "I'm really hurt. Can I please leave work and go to the hospital?" Both told her no and said she would be okay. Wu gave Dana an ice pack for her shoulder.

¶16. In addition, Dana testified that Wu asked her to come to his office, and he asked about the site of her injury. She showed Wu her right shoulder and right foot. Dana testified that without permission, Wu put a needle into the back of her shoulder. Dana turned around and asked Wu what he had injected into her body. Wu told her, "You'll be okay. . . . Shh, you'll be okay." Because she was unaware of what she was injected with, and she was hurting, she left Physicians and went to Singing River Hospital. The hospital gave her a sling for her arm and a boot. They also instructed her not to return to work; however, Physicians called Dana and instructed her that she needed to complete her workday. Not wanting to lose her job, Dana returned to Physicians. Following the incident, she wore the boot for approximately

7

three months.

¶17.   Dana then testified about her visit to Memorial Hospital and said that they referred her to an orthopedic specialist and physical therapy. She had multiple x-rays, treatments, and an MRI on her foot. She testified that she continues visiting the orthopedic doctor when she has flare-ups. She further testified that her Medicaid insurance paid for those medical treatments.

¶18.   Finally, Dana testified that Physicians employed the following seven people: Breanna Cuevas, Christy Cuevas, Summer Denning, Shannon Manix, Maja Wu, Dr. Shawn Wu, and Dana Kluczkowski.

¶19.   Maja, the business manager and also the wife of the owner, Wu, testified that Physicians employed four individuals (three full-time employees and one part-time employee), but she stated the following five names: Breanna Cuevas,[7] Christy Cuevas, Summer Denning, Dana Kluczkowski, and Maja Wu.

¶20.   Wu testified that Physicians had three employees working on the day of Dana's injury, including Dana Kluczkowski, Breanna Cuevas, and Maja Wu, his wife. Wu confirmed that Shannon Manix would sit in his office but maintained that she was not his employee. Instead, she was hired for the lab by a company in Hattiesburg and would collect samples for them. He testified that Breanna Cuevas worked part-time and that she only worked a couple of times per year. Wu's wife, Maja, was responsible for hiring, and she hired Breanna. Wu conceded that Physicians did not have workers' compensation insurance on the alleged injury

---

[7] Maja testified that Breanna Cuevas "was starting on May 20 so she wasn't an employee on May 21." Her testimony was inconsistent that she purportedly started on May 20 but was not considered an employee the very next day, May 21.

8

date because it was not required by law. For six years, Physicians did not carry workers' compensation insurance. Wu denied that Dana suffered a work-related injury in the petition to controvert because he talked to the patient. He was the first physician to examine Dana, and he is a specialist and board-certified in this particular area. Wu said that the patient only touched Dana's shoulder, and when he looked at the area where she complained of pain—her right shoulder—there was no swelling. He further explained that during his examination, he distracted her attention from the examination by asking her questions on other topics while continuing to manipulate the area (palpate the muscle), and she did not exhibit any signs of tenderness. He said that Dana has a past medical history of chronic pain, including neck, back, and joint pain. Finally, he testified that he provided Dana with a "trigger point" injection, one that contained no medicine. Wu stated that sometimes uninjured patients are provided injections of normal saline and that the pain is just psychological. He gave Dana such an injection. He stated this is to prevent people from seeking drugs. Moreover, Wu testified that he goes to court as an expert to prevent fraudulent claims.

¶21. Following the hearing, the AJ issued an order on April 24, 2024, finding that Physicians was subject to the Mississippi Workers' Compensation Law and that Dana sustained a compensable injury.

*Appeal to Workers' Compensation Commission*

¶22. On May 14, 2024, Physicians filed a notice of appeal with the full Commission. On October 4, 2024, Physicians filed its brief raising two issues. First, it claimed that the AJ erred by finding Physicians was subject to the Workers' Compensation Law because

9

Physicians had fewer than five employees. *See* Miss. Code Ann. § 71-3-5 (Rev. 2021) (subjecting those with five or more employees to the law). Second, Physicians alleged that Dana was not injured and therefore did not have a compensable claim. Physicians attached three exhibits to its brief: (1) a list of employees on its payroll from 2019 to 2024, (2) Dana's medical records from Singing River Hospital, and (3) Dana's time cards for the date of injury and the following Monday. These were the exhibits that the AJ would not allow into evidence but marked for identification purposes only. Parties are offered an additional opportunity to supplement the record before the Commission under Mississippi Workers' Compensation Procedural Rule 2.9, titled "Introduction of Evidence and Discovery." This rule states in relevant part:

> All testimony and documentary evidence shall be presented at the evidentiary hearing before the Administrative Judge. The hearing shall be stenographically reported or recorded. The Commission has discretion to admit any additional evidence offered on review. A motion to introduce additional evidence must be made in writing at least five (5) days before the date of the Commission's review hearing. The motion shall state with particularity the nature and need for such evidence, and the reason it was not introduced at the evidentiary hearing. If additional evidence is admitted, it shall be stenographically reported or recorded and become a part of the record.

But Physicians did not file a motion to introduce additional evidence, and because it did not do so, the Commission did not make them part of the record or consider them when making its decision. Dana filed her reply brief on October 21, 2024.

¶23. On December 6, 2024, the Commission issued an order finding that Physicians employed five people and that neither the exhibits marked for identification nor the exhibits attached to Physicians' brief were part of the record. The Commission instructed the AJ to

conduct any further investigation necessary to impose an appropriate penalty for failing to carry workers' compensation insurance. Accordingly, the Commission affirmed the AJ's decision and remanded for any further proceedings that would be necessary to dispose of all remaining issues.

¶24. Physicians now appeals, raising two issues that are before this Court: (1) whether Physicians employed fewer than five employees, and (2) whether Dana sustained a compensable injury.

## STANDARD OF REVIEW

¶25. "The standard of review in workers' compensation cases is limited. The substantial evidence test is used." *Weatherspoon v. Croft Metals Inc.*, 853 So. 2d 776, 778 (¶6) (Miss. 2003). "The . . . Commission is the trier and finder of facts in a compensation claim." *Id*. "The Commission is also the ultimate judge of the credibility of witnesses." *Barber Seafood Inc. v. Smith*, 911 So. 2d 454, 461 (¶27) (Miss. 2005). We will reverse the Commission's decision "only for an error of law or an unsupported finding of fact." *Weatherspoon*, 853 So. 2d at 778 (¶6). "Reversal is proper only when a Commission order is not based on substantial evidence, is arbitrary or capricious, or is based on an erroneous application of the law." *Id*. The Supreme Court has explained, "[t]he deference granted the Commission by this Court's standard of review means that this Court cannot set aside a Commission's decision that is supported by substantial credible evidence, even if conflicting evidence exists and even if this Court may have found the facts otherwise if it were the trier of facts." *Sheffield v. S.J. Louis Constr. Inc.*, 285 So. 3d 614, 618 (¶8) (Miss. 2019). In general, we

11

review "the decision of the Commission, not . . . the AJ." *Id.*

## ANALYSIS

I. **Whether Physicians regularly employed five or more people on the date of injury, May 21, 2021, making it subject to the provisions of the Mississippi Workers' Compensation Law.**

¶26. Employers with five or more people regularly in service are required to carry Workers' Compensation insurance. Mississippi Code Annotated section 71-3-5 states, in relevant part:

> The following shall constitute employers subject to the provisions of this chapter:

> Every person, firm and private corporation, including any public service corporation but excluding, however, all nonprofit charitable, fraternal, cultural, or religious corporations or associations, *that have in service five (5) or more workmen or operatives regularly in the same business or in or about the same establishment* under any contract of hire, express or implied.

(Emphasis added).

¶27. "The test is that if by the character of the work the employer has once regularly employed [five] or more persons, [the employer] rema[i]ns under the [C]ompensation act even when the number employed temporarily falls below the minimum[.]" *Mosley v. Jones*, 224 Miss. 725, 733, 80 So. 2d 819, 821 (1955). "[A]n employer cannot be allow[ed] to oscillate between coverage and exemption as his labor force exceeds or falls below the minimum from day to day." *Jackson v. Fly*, 215 Miss. 303, 307, 60 So. 2d 782, 785 (1952), *superseded by statute on other grounds*. "Regularly in service" as used in section 71-3-5 does not mean continuously or constantly employed. "The basic coverage test is one-size; it inquires into the magnitude of the operation. Are five people used regularly to carry it on?

12

If the answer is 'yes,' coverage may be mandatory." John R. Bradley and Linda A. Thompson, *Mississippi Workers' Compensation* § 2:4 (2021 ed.) (citing *Jackson*, 60 So. 2d at 785).

¶28. Here, Physicians argues that it employed only three individuals, as testified to by Wu. However, other witnesses' testimony contradicted Wu's assertion. Maja testified that Physicians employed a total of four employees, yet she identified five individuals by name. Their credibility was further undermined by Dana and Denning, both of whom testified that Physicians employed a total of seven employees and specifically named each person. The record contains no evidence corroborating Wu's assertion of a lesser number of people being regularly employed at Physicians.

¶29. In determining the actual number of employees at Physicians, the Commission had to assess witness credibility. The Commission found the testimonies of Wu and Maja were inconsistent, while it deemed Dana and Denning's testimony as credible and consistent. The Commission also concluded, after reviewing only one transcript of Wu's testimony without the benefit of observing his demeanor, that his testimony lacked credibility. Even assuming that two of the seven individuals were not regular employees, the evidence nevertheless established that Physicians maintained at least five regular employees: Breanna Cuevas, Christy Cuevas, Summer Denning, Dana Kluczkowski, and Maja Wu.

¶30. We find substantial evidence supporting the Commission's findings that Physicians regularly used five employees to carry on its operation. Moreover, as the ultimate judge of witness credibility, the Commission was entitled to weigh conflicting testimony and resolve

13

inconsistencies. *City of Verona v. Moffett*, 394 So. 3d 398, 405 (¶21) (Miss. Ct. App. 2024) ("Where there is conflicting medical testimony, the Commission has the responsibility to apply its expertise and determine which evidence is more credible." (quoting *Washington v. Woodland Vill. Nursing Home*, 25 So. 3d 341, 355 (¶33) (Miss. Ct. App. 2009) (other citation omitted)). The record demonstrates that the Commission's determination—that Physicians regularly employed five or more people at the time of Dana's injury—is supported by substantial credible evidence. Accordingly, Physicians was subject to the provisions of the Mississippi Workers' Compensation statute.

**II.      Whether the Commission erred in affirming the AJ's ruling that Dana suffered a compensable injury.**

¶31.    To recover benefits, a workers' compensation claimant must prove (1) an accidental injury, (2) which arises from the course and scope of employment, and (3) there must be a causal relationship between the injury and the alleged disability. *Doukas v. Kiln Self Storage*, 410 So. 3d 469, 476 (¶20) (Miss. Ct. App. 2024) (quoting *Hedge v. Leggett & Platt Inc.*, 641 So. 2d 9, 12-13 (Miss. 1994)), *cert. denied*, 408 So. 3d 1274 (Miss. 2025). The employer's evidence on rebuttal must rise above mere speculation or possibility. *Id.*

¶32.    In the case at hand, Physicians argued to the Commission it had proof that Dana suffered no "injury" causing disability, only "bruising." Physicians attempted to submit the Singing River Hospital medical records in support, along with the patient's statement. But the AJ refused to admit them because they were not properly submitted prior to the compensability hearing. The Commission affirmed this ruling, as well as the AJ's decision on the admissibility of those exhibits. Yet the Commission pointed out that Physicians still

14

could have sought to have the exhibits considered by the Commission had it filed the appropriate motion as well. But it did not. Accordingly, the Commission correctly held that "for the issues on appeal" (i.e., Physician's coverage by the Act and Dana's compensable injury), these exhibits were not admissible and would not be considered.

¶33. We will only reverse the Commission's decision if it "lacks the support of substantial evidence, is arbitrary or capricious, is beyond the Commission's scope or its power, or violates constitutional or statutory rights." *Doukas*, 410 So. 3d at 475 (¶19). Here, the Commission and the AJ relied on the following evidence to conclude Dana suffered a compensable injury: Dana's medical records from Memorial Hospital, Singing River Hospital, and Dr. Smith which were admitted into evidence; Dana's testimony regarding the injury; witness Denning's testimony (that the Commission found more credible than the testimonies of Wu and Maja); and the absence of evidentiary support from Physicians. Moreover, although Wu testified that Dana did not exhibit any signs of an injury when he examined her, the medical records supported Dana's account of a work-related injury. Even Maja and Wu admitted that an incident involving Dana occurred on May 21, 2021, contradicting Wu's earlier denial of any incident in his answer to Dana's petition to controvert. This Court further notes that Wu's testimony was inconsistent and not found to be credible by the Commission. Although Wu initially claimed that he was unaware of an incident involving Dana, Wu later confirmed that on May 21, 2021, he examined and injected Dana's right shoulder with a shot. He was unable to explain why he administered an injection if she had not reported pain or injury. Here, the Commission's decision is clearly

15

supported by the record and violates no rules or rights.

¶34.    Therefore, because Dana presented substantial evidence of a compensable injury, and Physicians presented no evidence to successfully rebut Dana's claims, this Court finds no error in the Commission's affirming the AJ's ruling.

## CONCLUSION

¶35.    The Commission affirmed the AJ's ruling finding that Physicians was subject to the Workers' Compensation Law and that Dana suffered a compensable work-related injury on May 21, 2021.  Because substantial credible evidence supports those findings, and no error appears, this Court affirms the Commission's decision.

¶36.    **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., WESTBROOKS, LAWRENCE, McCARTY, EMFINGER, WEDDLE AND LASSITTER ST. PÉ, JJ., CONCUR.**